# IN THE SUPREME COURT OF IOWA

No. 07–0449

Filed February 6, 2009

**STATE OF IOWA,**

Appellee,

vs.

**SESSIONS LAMONT HARPER,**

Appellant.

---

Appeal from the Iowa District Court for Webster County, Allan L. Goode, Judge.

Appellant challenges admissibility of victim's statements under the Confrontation Clause. **AFFIRMED.**

Thomas J. Miller, Attorney General, Kevin Cmelik and Scott Brown, Assistant Attorneys General, and Timothy N. Schott, County Attorney, for appellee.

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

**STREIT, Justice.**

A badly-burned woman was brought to the emergency room. When the attending doctor asked what had happened, she responded, "Sessions Harper raped me, tied me, and set my house on fire." Holly Michael died eighteen days later from the burns. At trial, Harper objected to Michael's statements, claiming their admission violated his right to confrontation as guaranteed by the Sixth Amendment. The district court determined the statements were admissible under the forfeiture-by-wrongdoing exception to the Confrontation Clause. Because Michael's statements were nontestimonial, the Confrontation Clause does not exclude them. We affirm Harper's convictions.

**I. Background Facts and Prior Proceedings.**

On the evening of January 7, 2006, Holly Michael, Ashleigh Attig, Becky Sittig, and Sessions Harper hung out at Michael's house in Fort Dodge drinking, smoking marijuana, and using cocaine. Shortly after midnight, they all went to a local bar for about an hour, where they all drank more. The four returned to Michael's house around 1:45 a.m. Sometime during the party, Harper and Attig, the mother of Harper's child, had sex in Michael's bedroom. Harper, Sittig, and Attig left Michael's house around 4:30 a.m. Between 4:38 and 6:35, Harper made eight calls from his cell phone to Michael's residence.

Later that morning, several neighbors noticed a red car with a colored lei hanging from the rearview mirror parked near Michael's home. At 9:30, one of the neighbors saw an African-American male seated in the car. Shortly thereafter, a couple driving past Michael's home noticed it was on fire and called the fire department.

When the fire department arrived, a fireman found Michael in the basement, laying face down, hands and feet bound, and wrapped in a

burning comforter. Even after firemen and paramedics removed the comforter, material attached to Michael's body was still on fire. In the ambulance, en route to the hospital, Michael insisted she wanted to die. The paramedic poured saline on Michael to put out the smoldering material attached to her body. Her hands and arms were severely burned, and the fingers on her left hand were charred off.

When Michael arrived in the emergency room, an x-ray technician heard Holly say, "please don't kill me" and "Harper did it, Harper did it." One of the treating physicians initially thought Michael was dead based on the severity of her burns. After he discovered she was alive and conscious, he asked her what had happened. She said that Sessions Harper had raped her, tied her, and set her house on fire. The doctor asked her to repeat what she had said, and Michael again said that Sessions Harper had raped her, tied her, and set her house on fire. Another physician treating Michael also heard what she had said. Based upon Michael's statements, a doctor performed a rape kit examination. Another attending physician treating Michael asked her who had done this, and Michael replied "Sessions Harper. He tied me up, raped me, and left me in the basement." Due to the severity of her burns, Michael was airlifted to Iowa City.

Michael's mother reported that Michael mouthed the word "Sessions" over and over again from her hospital bed. Sixty percent of her body had third- and fourth-degree burns, some to the bone. Her arms had to be amputated. Eighteen days after the incident, Michael died from complications from the burns and inhalation injuries.

An investigation revealed that separate fires had been intentionally started in Michael's house and the fire alarms had been disabled. Michael's jeans and a condom containing Harper's DNA on the inside

and Michael's DNA on the outside were found in Michael's bedroom, and a pair of sunglasses bearing Harper's fingerprint and blood was found in the basement. Tests showed a mixture of gasoline and petroleum product had been poured on Michael.

Harper was arrested and charged with first-degree sexual abuse, kidnapping, murder, and arson. Harper filed a motion in limine requesting Michael's statements to medical personnel at the hospital be excluded on the grounds the statements were hearsay and violated Harper's right of confrontation. The district court entered an order allowing the State to use Michael's statements at trial. At trial, Harper was found guilty of all charges and sentenced to three life sentences and one sentence of twenty-five years. Harper appeals, claiming Michael's statements were hearsay and violated the Confrontation Clause and ineffective assistance of counsel for failing to object to an unnecessarily suggestive car identification.

## II. Scope of Review.

We review claims involving the Confrontation Clause de novo. *State v. Bentley*, 739 N.W.2d 296, 297 (Iowa 2007). We review hearsay claims for errors at law. *State v. Newell*, 710 N.W.2d 6, 18 (Iowa 2006). However, hearsay must be excluded "unless admitted as an exception or exclusion under the hearsay rule or some other provision." *State v. Dullard*, 668 N.W.2d 585, 589 (Iowa 2003). "This means a district court has no discretion to deny the admission of hearsay if the statement falls within an enumerated exception. . . ." *Id.* Thus, "[w]e will reverse the trial court's ruling only when there has been an abuse of its discretion in ruling on the circumstances triggering this exception." *Bratton v. Bond*, 408 N.W.2d 39, 44 (Iowa 1987).

### III. Merits.

**A. Hearsay exceptions.** Michael's statements that Sessions Harper raped her, tied her, and burned her house are hearsay and therefore are not admissible unless they qualify under an exception. Iowa R. Evid. 5.802. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). Michael's statements to hospital staff are admissible under two exceptions to the hearsay rule, excited utterance and dying declaration. Iowa Rs. Evid. 5.803(2), 5.804(b)(2).

An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Iowa R. Evid. 5.803(2). "The rationale behind the exception is that statements made under the stress of excitement are less likely to involve deception than if made upon reflection or deliberation." *State v. Tejeda*, 677 N.W.2d 744, 753 (Iowa 2004). In determining whether a statement qualifies as an excited utterance, the trial court should consider:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999).

The circumstances surrounding Michael's statements support the district court's finding the statements are excited utterances. The time lapse between when Michael was rescued from the basement to when she made the statements to hospital staff was not long. In the interim, Michael was being treated for her burns and was still suffering from the

"startling event." Although Michael's statement that Sessions Harper raped her, tied her, and set her house on fire was in response to a question, the fact that a statement was prompted by a question does not automatically disqualify it as an excited utterance. For example, in *State v. Stafford*, 237 Iowa 780, 23 N.W.2d 832 (1946), a woman was badly beaten by her husband in the evening. She escaped and wandered in the darkness all night until she arrived at her sister's house the next morning. *Stafford*, 237 Iowa at 784, 23 N.W.2d at 835. Not recognizing her, the sister asked the badly-beaten woman what had happened. *Id.* The woman identified herself and said that her husband had almost beaten her to death. *Id.* Determining the statement was an excited utterance, the court explained, "[t]o declare what had taken place, how she came to be injured and where, while lacking the element of contemporaneous connection, yet will stand the test of spontaneity, and a natural expression of what had happened to her." *Id.* at 787, 23 N.W.2d at 836; s*ee also Atwood*, 602 N.W.2d at 782–83 (statement in response to the question "what happened?" determined to be an excited utterance).

Further, Michael did make other statements spontaneously that implicated Harper. One of the hospital workers heard Michael say, "Please don't kill me. Harper did it, Harper did it." Under the circumstances, Michael's statements describing what happened and identifying her perpetrator were not reflective or deliberative, but rather made under the stress of her situation. *Tejeda*, 677 N.W.2d at 753. Michael's condition (suffering from severe burns) and the brutality of the event described point in favor of the statement being an excited utterance. When she uttered the statements concerning her present

condition, her skin was still smoldering and the pain of the event was still continuing.

In addition, Michael's statements are admissible under the dying declaration exception. Iowa R. Evid. 5.804(b)(2). A dying declaration is "[a] statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be the declarant's impending death." *Id.* In order for a statement to be admissible under this exception, it must be clear from the circumstances that the declarant's "sense of impending death was so certain that he was without hope or expectation of recovery." *Bratton*, 408 N.W.2d at 45. Dying declarations are only admissible to show the cause and circumstances behind the declarant's death. *Id.*

In our case, Michael was in excruciating pain and knew that death was near. In the ambulance, she told the paramedic she wanted to die. One hospital staff member heard Michael say "I think I'm going to die." Michael's burns were so severe and extensive that one of the physicians thought she was dead when she arrived in the emergency room. Considering all of the circumstances, Michael's statements that Sessions Harper raped her, tied her, and set her house on fire were made with knowledge of impending death. Her statements are thus admissible under the dying declaration exception as well.

As the district court appropriately determined Michael's statements were admissible under either the excited utterance exception or the dying declaration exception, we need not determine whether her statements are admissible under Iowa Rule of Evidence 5.803(4), statements made for the purpose of medical diagnosis or treatment.

**B.  Confrontation Clause.**  The Sixth Amendment of the United States Constitution provides "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court determined testimonial statements from unavailable witnesses are not admissible unless the defendant had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203. Nontestimonial statements, although still subject to hearsay rules, are exempt from the Confrontation Clause analysis. *Id.* Although the *Crawford* court declined "to spell out a comprehensive definition of 'testimonial,'" it did state the term "applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court further provided three formulations to assist courts in determining whether a statement was testimonial:

> [1] *ex parte* in-court testimony or its functional equivalent— that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; [2] extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; [3] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193 (citations omitted).

In *Davis v. Washington*, 547 U.S. 813, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006), the United States Supreme Court expanded on the differences between testimonial and nontestimonial statements. *Davis* concerned statements made by the victim to a 911 operator identifying her assailant. *Davis*, 547 U.S. at 817, 126 S. Ct. at 2271, 165 L. Ed. 2d at 234. Distinguishing testimonial and nontestimonal statements to

police officers, the Court determined the victim's statements were nontestimonial since she was neither acting as a witness nor testifying, but rather describing events that were actually happening as she was facing an ongoing emergency. *Id.* at 827, 126 S. Ct. at 2276, 165 L. Ed. 2d at 240. As the Court summarized:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822, 126 S. Ct. at 2273–74, 165 L. Ed. 2d at 237. Recently, in *Giles v. California,* ___ U.S. ___, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), the Court suggested "[s]tatements to friends and neighbors about abuse and intimidation, and statements to physicians in the course of receiving treatment" are nontestimonial and would only be excluded, if at all, by the rules of hearsay. *Giles,* ___ U.S. at ___, 128 S. Ct. at 2692–93, 171 L. Ed. 2d at 505.

If a statement is testimonial, it may nonetheless be admissible if it falls under one of two exceptions, dying declaration or forfeiture by wrongdoing. *Id.* at ___, 128 S. Ct. at 2682, 171 L. Ed. 2d at 495. Although the United States Supreme Court has not elaborated on the dying declaration exception, it has recently defined the forfeiture-by-wrongdoing exception. *Id.* Unconfronted testimony can only be admitted under the forfeiture-by-wrongdoing exception if "the defendant intended to prevent a witness from testifying." *Id.* at ___, 128 S. Ct. at 2684, 171 L. Ed. 2d at 497. A mere showing that the defendant caused the person to be absent is not sufficient. *Id.*

Without determining whether Michael's statements to hospital personnel were testimonial or not, the district court concluded the statements were admissible under the forfeiture-by-wrongdoing exception to the Confrontation Clause. In its determination, the court did not have the benefit of the *Giles* decision. In our review, we need not address whether the statements are admissible under the *Giles* definition of forfeiture by wrongdoing. Michael's statements are nontestimonial, and, therefore, the Confrontation Clause does not exclude them.

Michael's statements to the hospital staff that Sessions Harper raped her, tied her, and set her house on fire are nontestimonial. Her statements were made neither to law enforcement nor "under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193. We recently determined that a victim's statements to a treating nurse were nontestimonial. *State v. Schaer*, 757 N.W.2d 630 (Iowa 2008). In *Schaer*, an emergency room nurse asked a badly-beaten woman what had happened, and the woman responded that she had been beaten by her ex-boyfriend. *Id.* at 632. As " 'the victim's statement lacked those attributes of testimony by a witness that are the concern of the confrontation clause,' " we determined that the statement was nontestimonial in character. *Id.* at 636 (quoting *People v. Cage*, 155 P.3d 205, 208 (Cal. 2007)).

Further, other states have overwhelmingly held that statements to physicians, nurses, and other medical personnel under most circumstances are nontestimonial. *See State v. Slater*, 939 A.2d 1105 (Conn. 2008) (victim's statement to ER doctor about being raped was admissible); *Cage*, 155 P.3d at 208 (statement responding to doctor's

question about how wound happened was admissible); *People v. Vigil*, 127 P.3d 916 (Colo. 2006) (child's statement about an assault to the examining physician was not testimonial); *State v. Scacchetti*, 711 N.W.2d 508 (Minn. 2006) (statement made by child to nurse practitioner was nontestimonial); *State v. Vaught*, 682 N.W.2d 284 (Neb. 2004) (victim's statement identifying perpetrator made to doctor was nontestiminal since made for the purpose of medical diagnosis or treatment).

These cases make it clear that statements to medical personnel are nontestimonial in many circumstances not only because the statements bear little resemblance to the types of testimonial statements identified in *Crawford*, but also because the statements assisted the physicians in the diagnosis and treatment of the patient. For example, in *Cage*, a teenage boy was brought to the hospital with a large gash on his face. *Cage*, 155 P.3d at 208. According to the treating surgeon's usual practice, he asked the boy what had happened. *Id.* The boy responded that he had been held down by his grandmother while his mother cut him with a piece of glass. *Id.* Determining that the statement was nontestimonial, the Supreme Court of California explained:

> The primary purpose of the physician's general question, objectively considered, was not to obtain proof of a past criminal act, or to identify the perpetrator, for possible use in court, but to deal with a contemporaneous medical situation that required immediate information about what had caused the victim's wound.

*Id.* at 792, 155 P.3d at 207.

Comparatively, in *Bentley*, the circumstances surrounding a statement made to a medical professional indicated the statements were testimonial. We determined statements made to a counselor during an interview arranged by the police, observed by the police, and coached by

the police were testimonial since "the interview . . . was essentially a substitute for police interrogation at the station house." *Bentley*, 739 N.W. 2d at 299.

In our case, a doctor asked Michael, who was badly burned, what had happened to her. He testified that such a question is a standard part of his evaluation, analysis, and treatment. The doctor said Michael told him Sessions Harper had raped her, tied her, and set her house on fire. Her statements were not "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192. Nor were they the "functional equivalent" of testimony. *Id.* The primary purpose of the statements was to assist the physicians in treating her. Therefore, Michael's statements were nontestimonial, and their admission did not violate defendant's right to confront witnesses against him.

**C. Ineffective assistance of counsel.** Harper asserts he was denied effective representation of counsel for counsel's failure to object to witnesses' identification of his vehicle. To succeed on a claim for ineffective assistance of counsel, the defendant must demonstrate "(1) counsel failed to perform an essential duty, and (2) prejudice resulted." *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007). Harper claims his attorney should have filed a motion to suppress the identification of his vehicle because the identification procedure was unnecessarily suggestive and violated his right to due process. Several neighbors saw a red car with a colored lei hanging from the rearview mirror outside Michael's house shortly before the fire was reported. The police showed these witnesses photographs of the defendant's car, which they then identified as the car parked outside of Michael's house. Harper

asserts the police should have presented a photo array and not just pictures of the car in question.

The pretrial identification of a car does not implicate the defendant's due process rights. *State v. Bruns*, 304 N.W.2d 217, 219 (Iowa 1981) ("We decline to extend cases protecting the accused's right to a fair pretrial identification of his person to the pretrial identification of items of physical evidence."). Therefore, Harper's counsel was not ineffective for failing to object to the identification procedures of the car.

## IV. Conclusion.

Michael's statements to hospital staff that Sessions Harper raped her, tied her, and set her house on fire are admissible under two exceptions to the hearsay rule, excited utterance and dying declaration. Iowa Rs. Evid. 5.803(2), 5.804(b)(2). Because these statements were nontestimonial, the admission of Michael's statements did not violate defendant's right to confront witnesses against him.

**AFFIRMED.**