# IN THE COURT OF APPEALS OF IOWA

No. 13-1461
Filed October 29, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**COREY LONDON,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

Corey London appeals his convictions for willful injury causing serious injury and assault. **AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Benjamin Parrott, Assistant Attorney General, Michael J. Walton, County Attorney, and Patrick McElyea, Assistant County Attorney, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Corey London his convictions for willful injury causing serious injury and assault, contending (1) the district court erred in overruling his hearsay objections to testimony from one of the State's witnesses, (2) trial counsel was ineffective in several respects, and (3) the district court entered an illegal sentence. We affirm in part, vacate in part, and remand for entry of an order in accordance with this opinion.

## I.    *Background Facts and Proceedings*

We filed our opinion in this case on October 15, 2014, but subsequently granted London's petition for rehearing. Our October 15 decision is therefore vacated, and this decision replaces it.

Following an alleged assault of Janell Bentley with a baseball bat, which fractured her skull, Corey London was charged with willful injury causing serious injury, in violation of Iowa Code section 708.4(1) (2013), enhanced as an habitual offender under sections 902.8 and 902.9, and domestic abuse assault causing bodily injury, in violation of sections 236.2 and 708.2A(2)(b). London pled not guilty and filed a notice of his intent to rely on the defense of self-defense.

The case proceeded to a jury trial. The State called three witnesses at trial: Bentley's mother, who testified as to her observations of Bentley in the emergency room following the assault; a Davenport police officer, who testified as to his observations upon responding to the scene of the assault; and an emergency room physician, who testified about Bentley's injuries and statements she made while being treated. Janell Bentley was apparently not available as a

witness for trial and she did not testify. The jury could have deduced the following from the evidence presented by the State.

At around 11:45 p.m. on February 7, 2013, Davenport Police Officer Donnie Pridemore was dispatched to a disturbance call. He responded within ten minutes. Inside the house, Officer Pridemore saw Janell Bentley kneeled down on the floor, holding her head, and crying. Officer Pridemore observed Bentley had a laceration on the back of her head, a swollen lip, and swelling on her face. There was a lot of blood; Bentley's head was bleeding and blood was pooled on the floor around her. Officer Pridemore saw a kitchen knife near where Bentley was laying, but there was no blood on it. Officer Pridemore also found a metal baseball bat on the floor next to the door.

Medical personnel arrived a few minutes later and attended to Bentley's head injury. Bentley was "upset," "crying a lot," and kept repeating that she had been hit with a bat. She identified Corey London as the person who had hit her with the bat. London is the father of two of Bentley's children.[1] Officers were not able to locate London until approximately one month later. When they did so, London denied having assaulted Bentley.

Bentley was treated for her injuries at the hospital, where she told the treating physician she had been struck twice in the head by a baseball bat by "a guy she knows."[2] Bentley had a skull fracture, swelling, a stellate laceration on

---

[1] During an appearance on *Maury* (formerly, the *Maury Povich Show*), London learned Bentley's youngest child, of which London was also thought to be the father, was proven by DNA testing not to be his child.

[2] Testimony from Bentley's mother that Bentley told her London was the person who hit her with the bat was excluded by the district court on defense counsel's hearsay objections.

her head, bruising to her brain, and subdural bleeding. She also experienced severe vertigo. Her injuries were consistent with receiving a blow from an object, and the physician opined the injuries could have resulted in death.

At the close of the State's case, defense counsel moved for a judgment of acquittal. The district court addressed the motion, finding sufficient evidence in the record that Bentley "was struck with a baseball bat," Bentley "sustained a serious injury," and "whoever struck her with the bat intended to cause a serious injury." The court observed it was a "closer question" whether London was the person who swung the bat and caused Bentley's injuries. The court stated,

> As to the crime of Willful Injury, as charged in Count I of the Trial Information, . . . the only evidence in the record at this point concerning the defendant is a statement testified to by Officer Pridemore that Janell Bentley told ambulance personnel that Corey London had struck her. The Court finds that a rational trier of fact, if that testimony was accepted, could find that it was the defendant that struck Janell Bentley with a baseball bat . . . .
> . . . .
> As to Count II, Domestic Abuse Assault, again, we have the same issue. The only testimony in the Court's recollection concerning the defendant is the alleged victim's statements to ambulance personnel, testified to by the police officer. But, again, a rational trier of fact could decide to accept that testimony.

The district court therefore overruled the motion as to both counts.

Defense counsel then made her opening statement, which she had previously reserved. Defense counsel conceded London "[hit] Bentley with a baseball bat," but claimed he "was merely defending his life" after Bentley "stabbed him with a knife."

The sole witness for the defense was London's girlfriend Lakeisha Branom. According to Branom, London came to her apartment with a severe stab wound to his arm shortly after midnight on February 8, 2013. Branom

testified London's wound was "gushing blood" and she "could see the meat in his arm." Branom was "scared" and thought London might die. Branom tried to convince London to go to the hospital but he refused. Branom wrapped London's arm in a bandage and applied pressure to stop the bleeding.

Branom testified she had known Bentley for several years and the two were very good friends. According to Branom, Bentley called her "hours later" about the incident. Branom learned that London and Bentley had gotten into an altercation about some money, Bentley stabbed London, and London struck Bentley with a bat in self-defense.

The defense rested and defense counsel moved for judgment of acquittal, which the district court denied. During closing argument, defense counsel argued the reason London had not sought medical attention for his stab wound and Bentley was evasive in discussing with the emergency room physician who hit her with the bat was because Bentley had stabbed London and he had acted in self-defense. Defense counsel stated, "What has been consistent is that the evidence—the testimony has indicated that yes—yes, Corey London did hit her." But defense counsel persisted that the State had not proved London was not acting in self-defense, and stated, "London does not claim that he did not hit Janell Bentley, but his witness in his defense tells you, clearly, he was defending himself."

The jury found London guilty of Count I as charged and guilty of a lesser-included offense of Count II, simple assault. London stipulated he was a habitual offender. London filed a motion for new trial, which the district court denied. The court sentenced London to a period of incarceration not to exceed fifteen years

on the willful injury as a habitual offender conviction. The court did not impose a separate sentence on the lesser-included offense of simple assault because it merged into the greater offense. London appeals.

## II. Hearsay Evidence

London contends the district court erred by allowing testimony from Officer Pridemore regarding Bentley's statement identifying London as the assailant.[3] London points to the challenged testimony as being the sole evidence presented by the State during its case-in-chief tying London to the incident. The State concedes Bentley's statement was hearsay, but claims the court correctly allowed the testimony under the excited utterance exception to the hearsay rule. *See* Iowa R. Evid. 5.803(2).

In general, review of a district court's decision to admit or exclude evidence is for an abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). Claims of hearsay, however, are reviewed for the correction of errors at law. *Id.* "This standard of review extends to determining whether statements come within an exception to the general prohibition on hearsay evidence." *Id.*

Hearsay is a statement, other than one made by the declarant while testifying at the trial, offered in evidence to prove the truth of the matter asserted. Iowa R. Evid. 5.801(c). Hearsay is not admissible unless provided by the Iowa Constitution, statute, rules of evidence, or other rules of the Iowa Supreme Court. Iowa R. Evid. 5.802.

---

[3] London argues, in the alternative, if error was not preserved on this claim that his trial counsel was ineffective in failing to preserve error. The State does not contest error preservation.

At trial, Officer Pridemore was permitted to testify over defense counsel's objection that London was the person who hit Bentley with the bat. London takes issue with the italicized statement in the following colloquy:

> Q. [STATE] While she's speaking with medical personnel, did she identify who hit her with the bat? A. [OFFICER PRIDEMORE] She did.
> Q. Okay. Who did she say identified—or hit her with the bat?
> DEFENSE COUNSEL: Objection, Your Honor. Hearsay.
> COURT: That's overruled.
> A. *She gave me the name Corey London.*

(Emphasis added.)

This statement was clearly offered by the State to prove the truth of the matter asserted, and the out-of-court statement was by someone other than the declarant testifying at trial. Therefore, the question is whether the testimony is admissible as an exception to the hearsay rule.

Iowa Rule of Evidence 5.803(2) provides an exception to the hearsay rule for an excited utterance: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." "The rationale behind the exception is that statements made under the stress of excitement are less likely to involve deception than if made upon reflection or deliberation." *State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009) (quoting *State v. Tejeda*, 677 N.W.2d 744, 753 (Iowa 2004)). Application of the excited utterance exception "lies largely within the discretion of the trial court." *State v. Atwood*, 602 N.W.2d 775, 782 (Iowa 1999). In determining whether a statement qualifies as an excited utterance, the court should consider:

> (1) the time lapse between the event and the statement, (2) the extent to which questioning elicited the statements that otherwise

would not have been volunteered, (3) the age and condition of the declarant, (4) the characteristics of the event being described, and (5) the subject matter of the statement.

*Harper*, 770 N.W.2d at 319 (quoting *Atwood*, 602 N.W.2d at 782).

London concedes the characteristics of the event being described by Bentley's statement "certainly qualify as a startling event," but maintains the State failed to demonstrate any of the other factors above. We disagree.

Officer Pridemore arrived to the scene within ten minutes of the dispatch call. Medical personnel arrived only a few minutes later. *See Atwood*, 602 N.W.2d at 782 (finding statement made at the hospital two or two and one-half hours after a serious accident resulting in the death of two children was an excited utterance). Bentley was "upset," "crying a lot," "worked up," and repeated that she had been hit with a bat. Bentley was on the ground bleeding profusely and, not knowing the extent of her head injury, Officer Pridemore waited his turn in order to allow medical personnel to attend to Bentley's injuries. Officer Pridemore stated Bentley "gave me the name Corey London" as the person who hit her with the bat during this time frame of his investigation. It is unclear whether Bentley's statement was made in response to a question. *See Harper*, 770 N.W.2d at 320 ("[T]he fact that a statement was prompted by a question does not automatically disqualify it as an excited utterance.").

Bentley was an adult, but she was severely injured and visibly upset by the assault. *See, e.g.*, *State v. Augustine*, 458 N.W.2d 859, 861 (Iowa Ct. App. 1990) (finding statements made while declarant was "understandably excited and outraged at defendant" were admissible as excited utterances); *State v. Watts*, 441 N.W.2d 395, 398 (Iowa Ct. App. 1989) (finding statements made while

declarant was "visibly shaken up," "shaking," "her voice was quivering," and she was "very upset" were admissible as excited utterances). As noted above, the characteristics of the event—receiving skull-fracturing blows by a metal baseball bat—is a startling event. And the subject matter of Bentley's challenged statement relate directly to the startling event—identification of the person who struck her with the bat. *See Harper*, 770 N.W.2d at 320 (observing the victim's statements describing what happened and identifying her perpetrator "were not reflective or deliberative, but rather made under the stress of her situation").

Under these circumstances, Bentley's statement meets the requisite "spontaneity in order to possess a circumstantial guarantee of trustworthiness for admissibility." *Watts*, 441 N.W.2d at 398 (quoting *Bratton v. Bond*, 408 N.W.2d 39, 45 (Iowa 1987)). We conclude Bentley's statement was an excited utterance and an exception to the hearsay rule.[4] Accordingly, the district court appropriately determined the statement was admissible into evidence at trial.[5] We affirm on this issue.

---

[4] The State also claims the court correctly allowed the testimony under the medical diagnosis or treatment exception to the hearsay rule. *See* Iowa R. Evid. 5.803(4) ("Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."). Because the statement was admissible under the excited utterance exception, we need not determine whether the statements are admissible under Iowa Rule of Evidence 5.803(4).

[5] The State raises a harmless error argument, claiming even if the district court erred in admitting Bentley's out-of-court identification as London as the assailant, "the record affirmatively establishes a lack of prejudice" where London asserted a defense of justification and conceded he struck Bentley with the bat. *See State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998) ("[E]rroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively. However, we will not find prejudice if the admitted hearsay is merely cumulative." (citation omitted)). We decline to consider the evidence introduced after the close of the State's case which the State points to as being cumulative. London's justification defense (and all evidence

### *III.* *Ineffective Assistance of Counsel*

London contends his trial counsel was ineffective in failing to (1) object to a number of instances of hearsay testimony, (2) object to certain testimony as violating his right of confrontation, and (3) request a spoliation instruction. We review these claims de novo. *See State v. Gines*, 844 N.W.2d 437, 440 (Iowa 2014).

To prevail on a claim of ineffective assistance of counsel, London must show (1) a deficiency in counsel's performance, and (2) that the deficient performance prejudiced his defense. *State v. Ross*, 845 N.W.2d 692, 697-98 (Iowa 2014) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). London must prove both the "essential duty" and "prejudice" prongs by a preponderance of the evidence. *See id.* "There is a presumption the attorney acted competently, and prejudice will not be found unless there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Ennenga v. State*, 812 N.W.2d 696, 701 (Iowa 2012) (internal quotation marks omitted).

"Even though these claims are generally preserved for postconviction relief, when presented with a sufficient record this court will address such a claim." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). If we determine the claim cannot be addressed on appeal, however, we must preserve it for a postconviction relief proceeding, regardless of our view of the potential viability of

---

supporting it that could be considered evidence cumulative to Bentley's statement identifying London as the assailant) was not introduced until after defense counsel's hearsay objection was overruled, the State rested its case, and London's motion for judgment of acquittal was denied.

the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010). We find the record adequate to address London's claims at this juncture.

*A. Objections to Hearsay Testimony.* London points to the following italicized statements during the State's direct examination of Officer Pridemore and claims counsel breached an essential duty in failing to raise objections:

> Q. [STATE] And what were you doing? A. [OFFICER PRIDEMORE] Mostly, just waiting my turn there. I tried to see if anyone else had been around when this actually happened. *Most people told me that they hadn't, but then one person said he had been there.*
> . . . .
> Q. Once you received this information, what did you do? A. [Bentley] was being treated by the medical personnel. *I spoke with the male who said that he had seen at least part of the incident.*
> . . . .
> Q. Did you—*Did you receive any information while you were there that Mr. London was ever injured?* A. *No, sir.*

(Emphasis added.)

Counsel's failure to object to the first two of these statements, although hearsay, cannot support a claim of ineffective assistance. The mere fact that someone witnessed the incident was not prejudicial to London; indeed, a witness may have supplied information supporting London's justification defense. And the third statement is not hearsay because it does not contain an out-of-court statement offered to prove the truth of the matter asserted. *See* Iowa Rs. Evid. 5.801(a) (defining "statement"), 5.801(c) (defining "hearsay").

London further claims that although counsel successfully lodged a hearsay objection to the following testimony of Officer Pridemore, counsel thereafter breached a duty in failing to move to strike or to admonish the jury to disregard his answer:

Q. [STATE] What information did you receive about the knife? A. [OFFICER PRIDEMORE] *The information I was given about the knife was that [Bentley] had grabbed if for defense, but that she had not used it.*

DEFENSE COUNSEL: Hearsay, Your Honor. Excuse me. Hearsay.

COURT: That's sustained.

(Emphasis added.) Without confirming the inadmissibility of the statement, we turn to the prejudice prong of London's claim of ineffective assistance with respect to this evidence. The jury heard other evidence indicating the knife was not used. Officer Pridemore observed there was no blood on the knife. London did not talk about being injured when he was arrested. The jury also heard evidence presented by the defense that Bentley *had* used the knife, and specifically that she had used it to stab London. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (noting it is in the province of the jury to resolve factual disputes and weigh the credibility of the witnesses). Under these circumstances, London has not sustained his burden to demonstrate a reasonable probability of a different result had the statement been stricken. London's claims of ineffective assistance on these grounds fail.

*B. Confrontation.* London contends his trial counsel was ineffective for failing to object to the hearsay testimony challenged above on Confrontation Clause grounds. "If a hearsay statement made by a declarant who does not appear at trial is testimonial, evidence of that statement is not admissible under the Confrontation Clause unless the declarant is unavailable to testify at trial and the defendant had a prior opportunity for cross-examination." *State v. Schaer*, 757 N.W.2d 630, 635 (Iowa 2008); *see Crawford v. Washington*, 541 U.S. 36, 68 (2004); *see also* U.S. Const. amend. IV; Iowa Const. art. I, § 10.

Testimonial statements include "statements made under circumstances that would lead witnesses to objectively believe the statements might be used at trial." *State v. Shipley*, 757 N.W.2d 228, 235 (Iowa 2008). Statements can be nontestimonial in the course of a police investigation "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 827 (2006) ("That is true even of the operator's effort to establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon."). Conversely, similar statements would be testimonial if "the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

Here, Officer Pridemore responded to the scene within ten minutes and found Bentley on the floor bleeding from a laceration on her head, among other injuries. Bentley was crying, upset, and worked up. Officer Pridemore was the first responder to the dispatch call; medical personnel arrived a few minutes later. Officer Pridemore testified, "I tried speaking with her. . . . I was trying to get as much information as I could, because I had other officers looking for the suspect."

These circumstances, viewed objectively, indicate the primary purpose of Officer Pridemore's questions was to "enable him to assess the situation and to meet the needs of the victim." *United States v. Clemmons*, 461 F.3d 1057, 1060 (8th Cir. 2006) ("When the officers arrived at the scene, Williams was lying in

front of a neighbor's house, suffering from multiple gunshot wounds. Officer Lester further testified that his purpose in speaking to the victim was, 'to investigate, one, his health to order him medical attention and, two, try to figure out who did this to him.'"). In terms of the emergency-nature of this situation, we believe it can be contrasted from a police interrogation and is more akin to a victim's attempt "to obtain assistance and treatment for her injuries." *See State v. Schaer*, 757 N.W.2d 630, 636 (Iowa 2008) (concluding a victim's statements identifying her attacker to her stepsister and treatment providers were nontestimonial); *see also People v. Cage*, 155 P.3d 205, 207-08 (Cal. 2007) (holding victim's identification of his assailant to treating physician who asked victim "what happened" was a nontestimonial statement). In sum, we conclude a reasonable observer would understand Officer Pridemore was facing an ongoing emergency and that the purpose of his questions was to enable police assistance to enable police assistance to meet that emergency and to assist Bentley. Accordingly, because the statements were nontestimonial, they do not implicate London's right to confrontation and trial counsel did not provide ineffective assistance in failing to object on that ground.

*C. Spoliation Instruction.* London contends his trial counsel was ineffective in failing to request a spoliation instruction "based on law enforcement's failure to preserve the knife in evidence." The bad faith destruction of exculpatory evidence is commonly referred to as spoliation. *See State v. Atley*, 564 N.W.2d 817, 821 (Iowa 1997). "A spoliation instruction is a direction to the jury that it may infer from the State's failure to preserve evidence

that the evidence would have been adverse to the State." *State v. Hartsfield*, 681 N.W.2d 626, 630 (Iowa 2004).

To justify instructing the jury on a spoliation inference, there must be substantial evidence to support the following facts: "(1) the evidence was 'in existence'; (2) the evidence was 'in the possession of or under control of the party' charged with its destruction; (3) the evidence 'would have been admissible at trial'; and (4) 'the party responsible for its destruction did so intentionally.'" *Id.* (quoting *State v. Langlet*, 283 N.W.2d 330, 335 (Iowa 1979)). Our analysis of this claim begins and ends with the last prong—intentional destruction of the evidence by the State.

In support of his claim that the State intentionally destroyed evidence, London claims Officer Pridemore "received information at the scene that Bentley had at minimum armed herself with the knife in connection with the altercation," and the State was therefore "sufficiently alerted that the knife bore on the question of how the incident started or progressed, and on the question of which party was the initial aggressor." The circumstances presented here do not support a finding that the failure to preserve the knife in evidence was intentional so as to support an adverse inference. *Cf. id.* at 632 (noting defense counsel's professional statement that he had asked the jailers for the jail videotape, and that the conversation was corroborated by a different officer, and that further evidence indicated the investigator had been misled as to whether a videotape existed). Here, there was no evidence the knife was destroyed; the State simply chose not to present it during the trial. *See, e.g.*, *Lynch v. Saddler*, 656 N.W.2d 104, 111 (Iowa 2003) (observing a spoliation inference should be "utilized

prudently and sparingly," and only where the requesting party "can show both intentional destruction and control of the evidence").

"[T]he spoliation inference is not appropriate when the destruction is not intentional." *Hartsfield*, 681 N.W.2d at 630; accord *Langlet*, 283 N.W.2d at 333; *see also Lynch*, 656 N.W.2d at 111 (Iowa 2003) ("Such inference may only be drawn when the destruction of relevant evidence was intentional, as opposed to merely negligent or the evidence was destroyed as the result of routine procedure."). Under these circumstances, trial counsel did not provide ineffective assistance in failing to request a spoliation instruction.

## IV. *Illegal Sentence*

London contends the district court entered an illegal sentence in merging only the sentences on Counts I and II and not the convictions. London requests that this Court vacate his Count II conviction. Our review of an alleged violation of Iowa Code section 701.9 is for correction of errors at law. *See State v. Mulvany,* 600 N.W.2d 291, 293 (Iowa 1999).

Iowa Code section 701.9 provides:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

A failure to follow section 701.9 creates an illegal sentence because "[w]here a lesser-included offense is merged with the greater offense, a conviction on the lesser-included offense is void." *State v. Anderson*, 565 N.W.2d 340, 344 (Iowa 1997). Here, in the written entry of judgment, the district court ordered:

> Pursuant to the jury finding Defendant guilty of Count 1—Willful Injury Causing Serious Injury, and pursuant to Defendant's stipulation that he is a Habitual Offender, a Class C felony, in violation of Section 708.4(1), Iowa Code, and pursuant to Sections 902.3 and 902.9, Iowa Code, it is the judgment and sentence of the Court that defendant be committed to the custody of the Director of the Iowa Department of Corrections for a period not to exceed 15 years. . . . .
>
> *The defendant was convicted of the lesser-included offense of Simple Assault under Count 2 of the Trial Information*. The Court finds that, pursuant to Iowa Code Section 701.9, Simple Assault, which is a lesser-included offense of Willful Injury, merges into the greater offense. For that reason, *the Court will not impose a separate sentence on the lesser-included offense of Simple Assault.*

(Emphasis added.)

The district court properly merged the sentence for the lesser-included offense of assault with the willful injury sentence, but entered judgment on both offenses. Because the assault charge merged with the willful injury charge under section 701.9, this conviction and judgment is vacated. We remand to the district court for entry of an order in accordance with this opinion. *See Anderson*, 565 N.W.2d at 344.

## V.    Conclusion

Upon our review, we conclude the district court appropriately determined the challenged hearsay statements were admissible into evidence at trial, trial counsel did not provide ineffective assistance, and we affirm London's judgment and sentence for willful injury causing serious injury. However, because the assault charge merged with the willful injury charge under Iowa Code section 701.9, this conviction and judgment is vacated. We remand to the district court for entry of an order in accordance with this opinion.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**