# IN THE COURT OF APPEALS OF IOWA

No. 18-0757
Filed November 6, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BERLOU JOE BARNARD,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Terry R. Rickers, Judge.

Defendant Berlou Barnard appeals his conviction of four separate counts of sexual abuse in the second degree and one count of obstruction of justice based on error in two evidentiary rulings. **AFFIRMED.**

Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Heard by Vaitheswaran, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, Judge.**

Defendant Berlou Barnard appeals his conviction of four separate counts of sexual abuse in the second degree and one count of obstruction of justice based on error in two evidentiary rulings. In the first ruling, the district court admitted a 2015 video recording of a forensic interview conducted at the Child Protection Center (CPC) at Blank Hospital in Des Moines. The video recording depicts the complaining witness, Barnard's minor granddaughter, N.C., recount several instances when she claims Barnard sexually abused her. Barnard argues the CPC interview is inadmissible hearsay and its admission also violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. In the second ruling, the district court granted the State's motion in limine to prevent Barnard from introducing evidence that N.C. had made sex abuse allegations against a different family member on a prior occasion. Barnard argues this evidence was not covered by Iowa Rule of Evidence 5.412, which does not cover false allegations of sexual abuse.[1] We affirm.

## I. Factual Background

In 2013, N.C. lived in Newton with her mother, stepfather, and younger sibling. Barnard moved to Newton in 2013 with his significant other, Michelle Wortman. Barnard began seeing N.C. almost every day and often babysat her.

---

[1] In his appellate brief, Barnard also argues defense counsel was ineffective to the extent counsel did not raise a constitutional objection to excluding the prior allegations evidence. However, Barnard does not explain how defense counsel was ineffective for doing so, and cites no authority in support of this claim. We decline to consider this argument. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

Barnard was previously convicted of two counts of third-degree sexual abuse and was on the sex offender registry. He came to an agreement with N.C.'s parents under which N.C. was allowed to visit him but only if Michelle was present.

The actions that led to Barnard's conviction became known to N.C.'s parents in August 2015. N.C. was seven years old. On August 13, N.C. told her mother Barnard had touched her "inappropriately" when she was at his house a few days before. N.C. described the incident to her mother in detail. Michelle had fallen asleep in the living room. Once Michelle was asleep, Barnard had picked N.C. up, carried her to his bedroom, and laid her down on the bed. He pulled down his "Hawkeye" shorts and told her to touch his genitals. While she did so, he pulled down her pants and started touching her genitals with his hand. Michelle came in and noticed Barnard with his pants down. N.C. heard Michelle yell "what are you doing" at Barnard, who insisted that he was just scratching.

N.C.'s parents took her to a local hospital to have her examined for sexual abuse. There, N.C. told an emergency room doctor that Barnard had touched her inappropriately more than once within the last nine months, not just the incident N.C. told her parents about. The doctor referred N.C. for a forensic examination at the CPC.

The CPC interview was conducted on August 24. N.C. was interviewed by a licensed forensic interviewer. The interview was conducted one on one, in an interview room with a one-way mirror and was video recorded. A deputy from the Jasper County Sheriff's Office observed the interview from behind the one-way mirror. In the interview, N.C. recounted the details of the most recent incident as well as three other times when Barnard inappropriately touched her.

In one instance, Barnard licked N.C.'s "private area." During another incident, Barnard took N.C. to a shed behind Barnard's house, where he partially covered her in a blanket and had N.C. lick his "private" and put his "wiener" in her mouth. Barnard applied a watermelon-flavored "jelly" to his genitals before she began. During the third incident, Barnard stopped N.C. in the hallway while Michelle was showering and forced her to rub his genitals while he rubbed her genitals. After observing the CPC interview, Jasper County police obtained a warrant and searched Barnard's home. During the search they found several pairs of "Hawkeye" shorts and sleepwear, a bottle of watermelon-flavored lubricant, and a blanket in Barnard's shed.

Jasper County police arrested Barnard on October 16. He was charged with four counts of sexual abuse in the second degree.[2] A charge of obstruction of justice was later added after evidence was introduced that showed Barnard had destroyed the blanket used to cover N.C. in the shed. Barnard pled not guilty to all charges.

## II. Procedural Background

The first evidentiary ruling challenged on appeal is the admission of the CPC interview into evidence. On March 28, 2017, the State moved for the recording to be admitted pursuant to Iowa Rule of Evidence 5.807, the residual hearsay exception. After a hearing on the motion on May 15, the district court determined the State had not yet shown the evidence was "necessary" under rule 5.807 and denied the motion.

---

[2] Barnard was also charged with one count of failure to comply with sex offender registry requirements and one count of possession of a controlled substance (marijuana). These charges were dismissed at the State's request.

Trial was set to begin on February 28, 2018. On January 16, the State filed its notice of intent to submit the CPC interview. Barnard filed his resistance later that month. Following the pretrial motions hearing on February 16, the district court reserved ruling on whether the CPC interview was admissible until the State offered it at trial. The district court also required that the State make an offer of proof before the court would consider admitting the interview.

The State made the required offer of proof after N.C.'s testimony at trial. N.C., now ten years old, struggled to answer questions. On direct examination, she could recount basic biographic information such as her age, address, her parents' and grandparents' names, and the names of her teachers in school. But when asked about the sexual abuse, she became "[r]eally nervous and scared" and told the prosecutor, "It's like really hard to say the answers," to the prosecutor's questions. The State requested a short recess, during which the State moved to admit the CPC interview into evidence. Defense counsel objected and argued the interview still did not meet rule 5.807's requirements and admission of the interview would violate Barnard's rights under the Confrontation Clause. The district court decided to wait to rule on the issue until defense counsel had a chance to cross-examine N.C. After the recess, N.C. could provide a slightly more detailed account of what had happened. She testified Barnard put "lotion" on his genitals during one incident, and "it was like watermelon or something like that." She was still, however, unable to describe when the incidents happened and the sequence in which they happened. N.C. continued to struggle on cross-examination. She testified she did not "really

remember that much" about the incidents, although she noted she did remember that they had happened.

After N.C. completed her testimony, the State made an offer of proof to lay foundation for admitting the CPC interview. The district court took the matter under advisement over the weekend and requested the parties submit briefs in support of their respective positions. When the trial resumed the following Monday, the district court admitted the CPC interview into evidence. The court noted the interview was "necessary" under rule 5.807:

> It was noteworthy to the Court that [N.C.] struggled trying to testify in open court. Although she could talk about routine things like the name of her teacher or what pets live in the house or things like that, whenever she was asked to talk about the substantive allegations in this case, it was clear that she more or less shut down. After a break, she was able to provide some testimony regarding acts of inappropriate behavior between her and the Defendant. But taking into account the fact that the incidents alleged are alleged to have occurred more than two years ago and that this video was created more than two years ago when the alleged incidents were more fresh in her mind, I think that that interview and those statements constitute the most probative evidence that's available, and the jury should be allowed to consider those statements and consider their credibility or lack thereof.

The district court also concluded the Confrontation Clause did not prohibit the court from admitting the interview. An edited version of the video was played for the jury.

The second evidentiary ruling relates to the report of another sexual abuse incident involving N.C. During discovery, Barnard's counsel learned N.C. had made sexual assault allegations against another relative in 2013. Police and Iowa Department of Human Services (DHS) staff investigated these allegations and determined they were "unfounded." The State moved to have all evidence

related to these allegations excluded. Over Barnard's resistance, the district court held Barnard had not met his burden to show the allegations were "false," and so the reports were inadmissible under Iowa Rule of Evidence 5.412 as "[e]vidence of a victim's other sexual behavior."

The jury found Barnard guilty of all four counts of sexual abuse and one count of obstruction of justice. Barnard was sentenced to two consecutive life sentences without the possibility of parole. Barnard appeals.

## III. Standard of Review

"Although we normally review evidence-admission decisions by the district court for an abuse of discretion, we review hearsay claims for errors at law." *State v. Smith*, 876 N.W.2d 180, 184 (Iowa 2016) (citing *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009)). "[W]e review claims brought under the Confrontation Clause de novo." *State v. Rainsong*, 807 N.W.2d 283, 286 (Iowa 2011) (citing *State v. Harper*, 770 N.W.2d 316, 319 (Iowa 2009)). "We review trial court rulings on admissibility of evidence under rule 5.412 in criminal prosecutions for abuse of discretion." *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006) (citing *State v. Mitchell*, 568 N.W.2d 493, 497 (Iowa 1997)). "Reversal is warranted only upon showing the 'court exercise[d] its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (alteration in original) (quoting *Mitchell*, 568 N.W.2d at 497).

## IV. Discussion

On appeal, Barnard argues the district court erred by admitting the CPC interview and granting the State's motion in limine to exclude any evidence

related to N.C.'s abuse allegations against another family member. We consider each of his arguments in turn.

### a. Hearsay

Under Iowa Code section 915.38(3), the district court may admit "recorded statements of a child . . . describing sexual contact performed with or on the child" if the statements "substantially comport with" rule 5.807. Rule 5.807 allows a hearsay statement not otherwise covered by one of the enumerated hearsay exceptions in rule 5.803 or 5.804 to be admitted if

> (1) The statement has equivalent circumstantial guarantees of trustworthiness;
> (2) It is offered as evidence of a material fact;
> (3) It is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (4) Admitting it will best serve the purposes of these rules and the interests of justice.

Iowa R. Evid. 5.807(a). The Iowa Supreme Court restated Rule 5.807's requirements in *State v. Rojas*, 524 N.W.2d 659 (Iowa 1994); see also *id.* at 664 (concluding recantation by witness made admission of her CPC interview "necessary"). Under *Rojas*, "[t]he requirements for admissibility under the residual exception are five-fold: trustworthiness, materiality, necessity, service of the interests of justice, and notice." 524 N.W.2d at 662–63.

On appeal, Barnard only contests the district court's application of the "necessity" requirement of rule 5.807. He bases his argument on two cases: *Rojas* and *State v. Neitzel*, 810 N.W.2d 612 (Iowa Ct. App. 2011). In *Rojas*, the supreme court held a forensic interview was "necessary" where the child complaining witness recanted what she said during the interview while testifying.

524 N.W.2d at 663. In *Neitzel*, a panel of our court determined a forensic interview was "necessary" where the child complaining witness did not recall specific information about the alleged abuse. 801 N.W.2d at 624 (holding the interview was admissible under both rule 5.807 and the hearsay exception for statements made for purpose of medical diagnosis). Barnard argues, in essence, that necessity is constrained to the facts of these two cases.

The "necessity" factor in both *Neitzel* and *Rojas* and the language of rule 5.807 rely on a finding that the prior statement is "more probative" than "any other evidence that the proponent can obtain through reasonable efforts." Iowa R. Evid. 5.807(a)(3). The prior statement is "necessary" not because the State needs it, but because it is the most probative evidence reasonably available. In *Neitzel*, our court noted the minor child's videotaped statement "was necessary because . . . [it was] the most probative evidence." 801 N.W.2d at 623. Similarly, the supreme court in *Rojas* concluded the testimony was "the most probative evidence" because "the statement was the best direct evidence implicating [the defendant] as [the complaining witness]'s abuser." 524 N.W.2d at 663; *see also id.* (noting a showing that the evidence is "the most probative evidence" is "[t]he appropriate showing of . . . necessity"). We have similarly focused on the probative value of CPC interviews in recent unreported decisions. *See State v. Heggebo*, No. 17-1194, 2018 WL 6719729, at *4–5 (Iowa Ct. App. Dec. 19, 2018) (concluding a CPC interview was "necessary" because it was "more probative on the issue" than alternative evidence (citing Rule 5.807(a)(3))); *see also State v. Pantaleon*, No. 15-0129, 2016 WL 740448, at *1–2 (Iowa Ct. App. Feb. 24, 2016) (concluding a CPC interview was admissible under rule

5.807 even when the child testified at trial); *State v. Olds*, No. 14-0825, 2015 WL 6510298, at *8 (Iowa Ct. App. Oct. 28, 2015) (same). The same reasoning applies here, where the witness was unable to describe the events of her assault and her prior statement was the most probative evidence. We conclude the district court did not err when it found the State had shown the CPC interview was "necessary" under *Rojas* and rule 5.807.

### b. Confrontation Clause

Barnard also contends admitting the CPC interview violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."). "[T]his bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42 (2004) (citing *Pointer v. Texas*, 380 U.S. 400, 406 (1965)). In particular, he argues his rights under the Confrontation Clause were violated because his trial counsel could not effectively cross-examine N.C., who was unable to recall specific information related to Barnard's actions and struggled to answer questions on both direct and cross-examination. But where a speaker "appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *State v. Tompkins*, 859 N.W.2d 631, 640 (Iowa 2015) (quoting *Crawford*, 541 U.S. at 59 n.9); *Rojas*, 524 N.W.2d at 664 ("The Confrontation Clause was satisfied here because the hearsay declarant actually testified in court and was available to be cross-examined."). "[T]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-

examination that is effective in whatever way, and to whatever extent, the defense might wish." *Tompkins*, 859 N.W.2d at 640 (alteration in original) (quoting *United States v. Owens*, 484 U.S. 554, 559 (1988)). Barnard had the opportunity to—and did—cross-examine N.C. That she struggled to testify to all the allegations she made in the CPC interview does not create a violation Barnard's rights under the Confrontation Clause. *See Delaware v. Fensterer*, 474 U.S. 15, 21 (1985) ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."). On our de novo review, we conclude the Confrontation Clause did not bar the admission of N.C.'s CPC interview.

### c. Prior Allegations of Sexual Assault

Finally, Barnard argues the district court abused its discretion by granting the State's motion in limine to exclude all evidence related to N.C.'s prior sexual abuse allegations against another relative. The district court determined Barnard did not meet his burden to show the allegations were false and concluded the allegations were inadmissible under Iowa's rape-shield law, codified as Iowa Rule of Evidence 5.412.

Rule 5.412 generally "prohibits introduction of reputation or opinion evidence of a complaining witness's other sexual behavior and substantially limits the admission of evidence of specific instances of a complaining witness's

other sexual behavior." *State v. Trane*, ___ N.W.2d ___, ___, 2019 WL 5089721, at *8 (Iowa 2019). "Its purpose 'is to protect the victim's privacy, encourage the reporting and prosecution of sex offenses, and prevent the parties from delving into distractive, irrelevant matters.'" *Id.* (quoting *State v. Edouard*, 854 N.W.2d 421, 448–49 (Iowa 2014)). But the rule does not apply to "prior false claims of sexual activity" which "fall outside both the letter and the spirit of the rape-shield law." *State v. Baker*, 679 N.W.2d 7, 10 (Iowa 2004). A defendant seeking to introduce evidence of a complaining witness's prior false claims "must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence." *Alberts*, 722 N.W.2d at 409. Neither party disputes that N.C. made the allegations. The only question is whether Barnard has met his burden to show the allegations were false.

To support his position, Barnard points to the deposition of Meagan See, the DHS staff member who conducted the investigation of the 2013 allegations. See interviewed N.C., N.C.'s mother, and several other family members before ultimately concluding the allegations were either "unfounded" or "unconfirmed." Barnard further points to the fact the police also investigated the allegations and declined to press charges. But as See explained during her deposition, her conclusion the allegations were "unfounded" does not mean they were "false." On the contrary, See concluded N.C. "provided credible statements that would indicate a sex act had occurred." See further clarified the "unconfirmed" determination was made because she could not corroborate N.C.'s account and

the DHS requirement for the alleged perpetrator to be in a caretaker role over N.C. was not met:

> Q. We're back to the determinations of the sexual abuse. What was your determination there? A. So that was still a not confirmed report. And once again, there were several issues with that. First of all, that caretaker role, I just was not able to establish [the relative] as a caretaker. As far as determining a sex act had occurred, I felt that [N.C.] had provided credible information regarding the sex act. But as far as gathering any information to just collaborate that information or to provide support or to bump that up to anything versus a he said/she said type issue, I just was not able to establish that.
> . . . .
> Q. So once again, this is not that what she was saying didn't happen. It's that what she was saying wouldn't have qualified as a sexual abuse under your definition because of the caretaker role? A. Because of the caretaker role, yes.
> Q. So everything she said might have actually happened, but you're going to say not confirmed because [the relative] does not qualify as a caretaker? A. Right.

Similarly, that criminal charges were not brought against the relative does not show the allegations were false either. *See State v. Bratcher*, No. 14-2058, 2016 WL 1677997, at *6 (Iowa Ct. App. Apr. 27, 2016) (concluding a prosecutor's refusal to bring charges is not evidence the charges were false); *see also People v. Lancaster*, 373 P.3d 655, 622 (Colo. App. 2015) ("Because a prosecutor may decline to bring charges for any number of reasons, the fact that sexual assault reports by the victim did not result in charges being brought is not a sufficient offer of proof . . . ."). As the district court noted in its order on the motion in limine, "The fact that law enforcement investigator's did not conclude that they could prove the abuse allegations beyond a reasonable doubt does not preclude this court from determining that N.C.'s allegations against [the relative] are credible." We conclude the district court did not abuse its discretion when it

concluded Barnard had not met his burden of proof to show N.C.'s prior allegations were false by a preponderance of the evidence.

Neither of the evidentiary errors argued by Barnard is meritorious. We affirm his convictions.

**AFFIRMED.**