# IN THE SUPREME COURT OF IOWA

No. 75 / 06-1000

Filed September 28, 2007

**STATE OF IOWA,**

    Appellant,

vs.

**JAMES HOWARD BENTLEY,**

    Appellee.

---

Appeal from the Iowa District Court for Benton County and Linn County, Denver D. Dillard, Judge.

State appeals from the district court's pre-trial ruling that admission of a ten-year-old child's videotaped statements at trial would violate the defendant's right to confront a witness against him under the Sixth Amendment to the United States Constitution. **AFFIRMED.**

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, David C. Thompson, Benton County Attorney, Harold Denton, Linn County Attorney, and Nicholas Maybanks, Assistant Linn County Attorney, for appellant.

Thomas J. O'Flaherty of O'Flaherty Law Firm, North Liberty, for appellee.

Alice A. Phillips of American Prosecutors Research Institute, Alexandria, Virginia, for amicus curiae.

**HECHT, Justice.**

The issue presented in this interlocutory appeal is whether the videotaped statements of J.G., a ten-year-old child, are admissible under the Confrontation Clause of the United States Constitution at James Bentley's trial on sexual abuse charges. Because we conclude J.G.'s statements are testimonial, J.G. is unavailable to testify at trial, and Bentley had no opportunity for cross-examination, we affirm the district court's ruling that the videotaped statements are inadmissible under the Confrontation Clause.

### I.     Factual Background.

On November 16, 2004, J.G. was interviewed by Roseanne Matuszek, a counselor at St. Luke's Child Protection Center (CPC).[1] The interview was arranged by Officer Ann Deutmeyer, an investigator employed by the Cedar Rapids Police Department, and Pam Holtz, a representative of the Iowa Department of Human Services (DHS). Officer Deutmeyer and Holtz watched and listened to the interview through an "observation window." During the videotaped interview, J.G. made numerous statements alleging James Bentley sexually abused her. Bentley's brother murdered J.G. on or around March 24, 2005. Other facts relevant to the disposition of this appeal will be presented below in our analysis of the legal issue presented.

### II.     Procedural Background.

Two days after J.G.'s interview at the CPC, the Linn County Attorney charged Bentley with the crime of sexual abuse in the second degree, in violation of Iowa Code sections 709.1 and 709.3 (2003). Soon afterward, the Benton County Attorney filed similar charges against Bentley.

---

[1]Matuszek holds a Master's Degree in counseling and has interviewed nearly 3,000 children during her fourteen years of service at the CPC.

Bentley filed in both cases a motion for a preliminary determination of the admissibility of J.G.'s videotaped interview under the Confrontation Clause of the United States Constitution. The district court ruled admission of the videotape would not violate the Confrontation Clause. After we denied Bentley's application for review of that ruling, he filed a motion in limine seeking to prevent the videotape's admission at trial.

After a hearing on the motion in limine, the district court held admission of the videotape would violate Bentley's constitutional right to confront a witness against him.[2] The State filed an application for discretionary review, which we granted. We stayed the district court proceedings pending resolution of this matter.

### III. Standard of Review.

We review de novo claims involving the Confrontation Clause. *State v. Hallum*, 606 N.W.2d 351, 354 (Iowa 2000).

### IV. Analysis.

The Confrontation Clause of the United States Constitution guarantees to Bentley the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held tape-recorded statements police officers elicited during a custodial interrogation of the defendant's wife were inadmissible at the defendant's trial because they were testimonial, the declarant was unavailable at trial, and the defendant had no prior opportunity for cross-examination. 541 U.S. at 38–40, 68–69, 124 S. Ct. at 1357, 1374, 158 L. Ed. 2d at 184–85, 203. The Court reasoned that the text and history of the Sixth Amendment support two inferences: (1) "[T]he principal evil at which the Confrontation

---

[2]By agreement of the parties, the hearing and ruling on the motion in limine pertained to both the Linn and Benton County cases.

Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused"; and (2) "[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Id.* at 50, 53–54, 124 S. Ct. at 1363, 1365, 158 L. Ed. 2d at 192, 194. Because the parties agree that J.G. is, tragically, "unavailable," and Bentley had no prior opportunity to cross-examine J.G., the admissibility of J.G.'s videotaped statements depends on whether they are "testimonial" if offered against Bentley in this case. If the statements are testimonial, they are inadmissible against Bentley at trial; but if they are nontestimonial, the Confrontation Clause does not prevent their admission.

Prior to *Crawford*, the government bore the burden of proving constitutional admissibility in response to a Confrontation Clause challenge. *United States v. Arnold*, 486 F.3d 177, 213 (6th Cir. 2007) (Nelson Moore, J., dissenting) (citing *Idaho v. Wright*, 497 U.S. 805, 816, 110 S. Ct. 3139, 3147, 111 L. Ed. 2d 638, 652 (1990); *Ohio v. Roberts*, 448 U.S. 56, 74–75, 100 S. Ct. 2531, 2543, 65 L. Ed. 2d 597, 613 (1980)). It does not appear that *Crawford* altered this allocation of the burden of proof. *Id.* Accordingly, we conclude the government bears the burden of proving by a preponderance of the evidence that J.G.'s statements are nontestimonial.

The Court's view expressed in *Crawford* that the Framers intended the Confrontation Clause to preclude admission of "testimonial" statements made by unavailable witnesses who have not been subjected to cross-examination was based, in part, on the Confrontation Clause's express reference to "witnesses against the accused"—that is, to those who "bear testimony" against the accused, whether in court or out of court. *Crawford,*

541 U.S. at 51, 124 S. Ct. at 1364, 158 L. Ed. 2d at 192 (internal quotation marks and citations omitted). One who "bears testimony" makes "[a] solemn declaration or affirmation . . . for the purpose of establishing or proving some fact." *Id.* (internal quotation marks and citations omitted).

The Court identified in *Crawford* "[v]arious formulations of th[e] core class of 'testimonial' statements" that the Confrontation Clause was intended to address: "*ex parte* in-court testimony or its functional equivalent," "extrajudicial statements . . . contained in formalized testimonial materials," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement[s] would be available for use at a later trial." *Id.* at 51–52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193 (internal quotation marks and citations omitted). Although the Court did not offer a comprehensive definition of "testimonial statement," its opinion noted that even if a "narrow standard" is used to determine whether statements are testimonial, "[s]tatements taken by police officers in the course of interrogations," such as the declarant's statements in *Crawford*, are testimonial. *Id.* at 52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193.

As the court noted in *Crawford*, "one can imagine various definitions of "interrogation." 541 U.S. at 53 n.4, 124 S. Ct. at 1365 n.4, 158 L. Ed. 2d at 194 n.4. Using the term in its colloquial sense, as the court did in *Crawford, see id.*, we conclude the interview of J.G. was essentially a substitute for police interrogation at the station house. Representatives of the police department and DHS were present and participated in the interview. J.G. was informed at the outset of the conversation that a police officer was present and listening. The questions posed were calculated to elicit from J.G. factual details of the past criminal acts that Bentley had

allegedly perpetrated against her. When the interview was concluded, the officer left the CPC with a videotaped copy of the interview which she considered evidence to be used against Bentley. The recorded interview conducted with the participation of a police officer is in our view a "modern practice[] with closest kinship to the abuses at which the Confrontation Clause was directed." *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374, 158 L. Ed. 2d at 203.

Upon our de novo review, we conclude the government has not met its burden of proving the recorded statements of J.G. identifying Bentley as her abuser and describing his acts of alleged sexual abuse are nontestimonial. The extensive involvement of a police officer in the interview leads us to conclude J.G.'s statements were in effect "taken by [a] police officer[] in the course of [an] interrogation[]." *Crawford*, 541 U.S. at 52, 124 S. Ct. at 1364, 158 L. Ed. 2d at 193.

A "community task force steering committee," which included some law enforcement personnel, organized the CPC. The record discloses a close, ongoing relationship has persisted between the CPC and representatives of local law enforcement agencies. The CPC acknowledges that one of its objectives is to provide centralized access to services, including law enforcement services. The police department's standard operating procedure calls for the referral of child victims of sexual abuse to the CPC for "forensic interviews." Law enforcement officials make continuing education workshops available to CPC employees, and Matuszek has attended such seminars.

Holtz and Officer Deutmeyer arranged the appointment for J.G.'s interview at the CPC. Immediately before and after J.G.'s interview, a "multi-disciplinary team," which included Officer Deutmeyer, met to discuss

the case. Such meetings of CPC team members routinely include discussions of whether crimes have been committed against the child-interviewee and the identities of the perpetrators of those crimes.

Officer Deutmeyer confirmed that CPC interviews with children generally focus "on the alleged crime." In fact, the interview of J.G. in this case illustrates the typical CPC interview protocol. Matuszek briefly engaged in casual "rapport building" as the interview began, but the subject of her questions and J.G.'s answers soon shifted and focused primarily on the specific acts of sexual abuse Bentley allegedly perpetrated against J.G.

The participants in the interview have acknowledged that the interview served an investigative function for the State. Matuszek's written "patient interview report" described the interview as an "evidentiary interview." Officer Deutmeyer accurately described Matuszek's conversation with J.G. as a "forensic interview" and an "investigative tool." J.G. was informed of the involvement of the police department on three separate occasions during the interview. Matuszek opened the interview by telling J.G. a police officer and a DHS representative were listening on the other side of the observation window. When J.G. subsequently indicated she wanted to discontinue the interview, Matuszek specifically implored J.G. to continue because "it's just really important the police know about everything that happened." At a later point in the interview, Matuszek encouraged J.G. to provide additional details because the police were "probably going to want to know just a little bit more" about the arrangement of Bentley's apartment, where some of the alleged acts of sexual abuse occurred.

Officer Deutmeyer's involvement in the interview was not limited to mere observation. Toward the end of the interview, Matuszek told J.G. she

was going next door to talk with the police officer and a representative of DHS about whether she "forgot to ask . . . some questions." When she returned to the interview room, Matuszek asked J.G. additional specific questions about Bentley's conduct. According to Officer Deutmeyer, questions posed to the interviewee after such mid-interview consultations between CPC staff and representatives of law enforcement are typically directed toward obtaining more "specific information because the child has given [the police] enough to believe that a crime has been committed," but the police need more evidence to substantiate the allegations and decide what course to pursue in future investigations. After J.G.'s interview, the CPC followed its protocol by giving a copy of the tape to Officer Deutmeyer. The tape of the interview was marked as "evidence" and placed in the police department's evidence storage room. These factual circumstances make it objectively apparent that "the purpose of the [recorded interview] was to nail down the truth about past criminal events." *Davis v. Washington*, 547 U.S. ___, ____, 126 S. Ct. 2266, 2278, 165 L. Ed. 2d 224, 242 (2006).

Indicia of "formality" surrounding J.G.'s statements reinforce our determination that J.G.'s statements were the product of a police interrogation. J.G. spoke in a calm environment responding to a series of structured questions posed by Matuszek. The statements constituted a historical account of past events, deliberately provided in response to questioning regarding past events. The statements were made in an environment designed and equipped to facilitate forensic interviews calculated to collect evidence against those suspected of abusing children. As we have already noted, the interview room included an observation window that enabled police officers to watch and participate in the

interview, and video equipment that was used to make a record of the interview for use by law enforcement officers.

The State asserts J.G.'s statements are nontestimonial because a reasonable child of J.G.'s chronological age (10) and functional age (7) would not have understood her statements would be used to prosecute the defendant. We conclude, however, an analysis of the purpose of the statements from the declarant's perspective is unnecessary under the circumstances presented here. J.G.'s testimonial statements lie at the very core of the definition of "testimonial," and fall within the category of *ex parte* examinations against which the Confrontation Clause was directed.[3]

We also reject the State's assertion that Bentley's right to confrontation in this case should yield to the interests of J.G. and the State because the Confrontation Clause is not inflexibly applied. The United States Supreme Court has concluded that "[a] State's interest in the physical and psychological well-being of child abuse victims may be

---

[3]We leave for another day the decision whether statements made by children during interrogations conducted by forensic interviewers without police participation are testimonial. As in *Crawford*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 and *Davis*, 547 U.S. ___, 126 S. Ct. 2266, 165 L. Ed. 2d 224, our holding today makes it unnecessary to decide whether and when statements made to someone other than law enforcement personnel are "testimonial." Courts addressing this question have reached disparate conclusions. *Compare United States v. Bordeaux*, 400 F.3d 548, 556 (8th Cir. 2005) (child sex abuse victim's videotaped statements made to a forensic interviewer were testimonial); *Rangel v. State*, 199 S.W.3d 523, 533–36 (Tex. App. 2006) (child's statements made two months after alleged abuse to child protective services investigator were testimonial); *State v. Buda*, 912 A.2d 735, 745–46 (N.J. Super. Ct. App. Div. 2006) (child's statements to government-employed social worker were testimonial); *State v. Hopkins*, 154 P.3d 250, 257–58 (Wash. Ct. App. 2007) (same), *with People v. Geno*, 683 N.W.2d 687, 692 (Mich. Ct. App. 2004) (statement to director of children's assessment center was nontestimonial because the interrogator was not "a government employee"); *State v. Bobadilla*, 709 N.W.2d 243, 254–56 (Minn. 2006) (child's statements to protective service worker during risk assessment interview were nontestimonial); *State v. Sheppard*, 842 N.E.2d 561, 566–67 (Ohio Ct. App. 2005) (statement to private clinical counselor in mental health interview was nontestimonial); *Commonwealth v. Allshouse*, 924 A.2d 1215, 1222–24 (Pa. Super. Ct. 2007) (child abuse victim's statements to county youth services caseworker at the child's home were nontestimonial).

sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Maryland v. Craig*, 497 U.S. 836, 853, 110 S. Ct. 3157, 3167, 111 L. Ed. 2d 666, 683 (1990). In *Craig*, the Court held the Confrontation Clause does not "categorically prohibit[]" testimony via closed circuit television by a child victim of sexual abuse if in-court testimony would be traumatic for the child. *Id.* at 840, 110 S. Ct. at 3160, 111 L. Ed. 2d at 675. Although *Craig* does stand for the proposition that the circumstances of the confrontation may be modified to protect children, it does not support the State's assertion that the right of confrontation may be dispensed with altogether if the declarant is a child. In *Craig*, the child victim testified under oath during trial and was subjected to cross-examination through closed-circuit television. The circumstances in the case now before the court are quite different, as J.G. is deceased and therefore unavailable to testify against Bentley, who has no opportunity to subject J.G.'s recorded statements to cross-examination. Bentley's right to confront a witness against him need not yield to the State's interest under the circumstances of this case.

Our conclusion that J.G.'s statements are testimonial is consistent with the decisions of other courts. *L.J.K. v. Alabama*, 942 So. 2d 854, 861 (Ala. 2005) (statements of four-year-old and six-year-old children to a state-employed child abuse investigator were testimonial); *T.P. v. State*, 911 So. 2d 1117, 1123 (Ala. Crim. App. 2004) (child's statements to a social worker in the presence of a police investigator were testimonial); *People v. Sisavath*, 13 Cal. Rptr. 3d 753, 757–58 (Cal. Ct. App. 2004) (child's statement to interview specialist at a private victim assessment center, made in the presence of the prosecuting attorney and district attorney's investigator, was testimonial); *People v. Sharp*, 155 P.3d 577, 579–82 (Colo. Ct. App.

2006) (five-year-old's videotaped interview with private forensic interviewer was testimonial where a police detective arranged the interview and interviewer asked questions requested by the detective); *In re Rolandis G.*, 817 N.E.2d 183, 188 (Ill. App. Ct. 2004) (statements to private child abuse investigator while police officer watched through one-way glass were testimonial); *State v. Henderson*, 160 P.3d 776, 789–90 (Kan. 2007) (statements made by child sexual abuse victim to social worker and police detective were testimonial); *State v. Snowden*, 867 A.2d 314, 325 (Md. 2005) (child sex abuse victims' statements during interview with DHS sexual abuse investigator arranged by police detective were testimonial); *Flores v. State*, 120 P.3d 1170, 1178–79 (Nev. 2005) (statements made by a child describing child abuse to police investigator and child protective services worker were testimonial); *State v. Blue*, 717 N.W.2d 558, 564 (N.D. 2006) (statements to private forensic interviewer working "in concert with or as agent of" the police were testimonial); *State v. Mack*, 101 P.3d 349, 352–53 (Or. 2004) (statements made by three-year-old during interviews with DHS caseworker were testimonial, where police officers arranged the interviews as a substitute for police interrogation, were present during the interviews, and videotaped them); *State v. Pitt*, 147 P.3d 940, 944–45 (Or. Ct. App. 2006) (statements made to private forensic child interviewer while police officer videotaped interview through one-way glass were testimonial), *opinion adhered to on reconsideration* at 159 P.3d 329 (Or. Ct. App. 2007); *In re S.R.*, 920 A.2d 1262, 1264 (Pa. Super. Ct. 2007) (child sex abuse victim's statements made to a forensic interview specialist while police officer watched through one-way glass were testimonial).

We credit the State's assertion that the CPC performs very important and laudable services in furtherance of the protection of children. The

child-friendly CPC facility includes a waiting room and play area with toys, games, books, a fish aquarium, and a television. The interview room includes drawing supplies and is equipped to maximize children's comfort. It is beyond dispute that information gathered from J.G. in such a child-friendly, safe environment could have been very useful in the treatment of her well-documented psychological conditions. The work of the CPC and the team of professionals who took J.G.'s statement is not impugned by our characterization of J.G.'s statements as "testimonial." The actors were doing important work intended to investigate past alleged crimes and prevent future crimes. Although one of the significant purposes of the interrogation was surely to protect and advance the treatment of J.G., as we have discussed above, the extensive involvement of the police in the interview rendered J.G.'s statements testimonial. Therefore, the district court correctly ruled the admission of the statements would violate Bentley's rights under the Confrontation Clause under the circumstances of this case.

## V. Conclusion.

Bentley's right to confront witnesses against him is an essential constitutional right, and we must be vigilant in guarding against its erosion. On this point, we share the opinion of Chief Justice Marshall, who wrote:

> I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is therefore incumbent on courts to be watchful of every inroad on a principle so important.

*See Crawford,* 541 U.S. at 73, 124 S. Ct. at 1377, 158 L. Ed. 2d at 206 (Rehnquist, J., concurring) (quoting *United States v. Burr,* 25 F. Cas. 187, 193 (C.C. Va. 1807) (No. 14,694)). Under the circumstances of this case, the district court correctly concluded J.G. was a witness who bore

testimony against Bentley in the recorded interview. Because Bentley has no opportunity to cross-examine J.G., the admission of her testimonial statements would violate Bentley's right to confront witnesses against him. We therefore affirm the district court's ruling.

**AFFIRMED.**