# IN THE COURT OF APPEALS OF IOWA

No. 14-0825
Filed October 28, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JAMES ANTHONY OLDS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Robert E. Sosalla (preliminary hearing) and Marsha M. Beckelman (trial), Judges.

        The defendant appeals from his convictions and sentence for sexual abuse in the second degree, sexual exploitation of a minor, lascivious acts with a child, lascivious conduct with a minor, false imprisonment, and indecent exposure. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Katherine Krickbaum and Heather Ann Mapes, Assistant Attorneys General, Jerry Vander Sanden, County Attorney, and Nick Maybanks, Assistant County Attorney, for appellee.

        Heard by Danilson, C.J., Tabor, J., and Sackett, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**DANILSON, Chief Judge.**

James Olds appeals from his convictions and sentence for sexual abuse in the second degree, sexual exploitation of a minor, lascivious acts with a child, lascivious conduct with a minor, false imprisonment, and indecent exposure.  He maintains the trial court admitted evidence of the complaining witness in violation of the Confrontation Clause of the Sixth Amendment.  He also maintains the court erred by admitting hearsay evidence that was not subject to an exception.  He argues his trial counsel was ineffective for failing to request a limiting instruction regarding questions asked of the complaining witness.  Lastly, he maintains the district court erred in denying his motion for judgment of acquittal.

Because the victim (S.O.) appeared at trial and was cross-examined, Olds' Sixth Amendment right to confront the witnesses against him has not been violated under the Federal Constitution.  We decline the invitation to interpret the Iowa Constitution differently, as the issue was not preserved.  We find the district court properly admitted the recordings of the Child Protection Center (CPC) interviews pursuant to the residual hearsay rule.  Because Olds maintains the district court was wrong to admit the testimony of the mother about S.O.'s previous statements but does not argue any specific error made by the district court, we decline to address the issue.  Additionally, Olds' complaint regarding the admission of S.O.'s discovery deposition was not preserved, and we decline to address the issue.  Because the jury's verdicts are supported by substantial evidence, the district court did not err in denying Olds' motion for judgment of acquittal.  Because the weight off the evidence also supports the verdicts, the district court did not abuse its discretion in denying Olds' motion for new trial.

Finally, we preserve for possible postconviction-relief proceedings Olds' claim that trial counsel was ineffective for failing to request a limiting instruction regarding Haskins' questions at the CPC interviews. We affirm.

**I. Background Facts and Proceedings.**

S.O. is the granddaughter of the defendant. Her father, Corbin Olds, is the defendant's adopted son.

On June 14, 2011, S.O. was six years old. While in the car with her mother, Jamie Olds, S.O. told her mother that "Papa Anthony"—the defendant—made her have a cigarette. She told her mother it was supposed to be a secret. When asked if Olds and S.O. had any other secrets, S.O. stated, "Papa Anthony makes up with me." Later the same day, S.O. used a doll to demonstrate to her mother how the defendant straddled her while she laid on a bed. S.O. stated she had her clothes on but Papa Anthony did not.

The mother contacted the police department who notified the Iowa Department of Human Services (DHS) of the allegations. An interview was set with a CPC for June 17. The mother did not discuss the allegations with S.O. after contacting the police.

Rachel Haskins, a trained forensic interviewer, conducted the interview with S.O. at the CPC. During the interview, S.O. told Haskins that Papa Anthony wanted her to keep the "sex secret." She said he asked her if she wanted to have sex and she told him no, but he said "yes, yes, yes." She also described that Papa Anthony was naked on top of her while she laid on his bed and watched cartoons. She stated she "almost throwed up" when she "saw his bottom." She said Uncle Romello—Olds' son—walked into Olds' bedroom and

told them to stop having sex and then threw her to the ground. Papa Anthony had his clothes off but her clothes were on. She described seeing his "bottom" and his "wiener." When asked how many times she had seen them, S.O. stated she had seen Papa Anthony's bottom more than once but his wiener only one time. When asked why, she responded that "his wiener was on her leg but his bottom wasn't on anything." She said his wiener was on her leg because she was too short and he was too big. She stated he moved his wiener against her leg and it was "gross." His hands held her hips while he rubbed against her body. She stated this had occurred more than one time.

Haskins asked S.O. if anyone wanted to take her picture. Haskins responded that Papa Anthony had taken photos of her with a camera that said "sex" on it. She said he also used his phone to take pictures of her. She stated he took photos of her with her clothes off and that she was hopping in the pictures because Papa Anthony had tied her to a chair. S.O. said she had refused to take her clothes off so he removed them. Afterwards, Papa Anthony said he had lost her clothes and made her look around the house for them. S.O. said Papa Anthony showed her the pictures of herself and asked if she thought she looked cute. She thought they looked ugly because she was not wearing any clothes. Papa Anthony uploaded the pictures to Facebook using a computer in the kitchen. All of the incidents related to Papa Anthony allegedly occurred when S.O. was between the age of three and six.

On August 17, 2011, Olds was charged by trial information with exploitation of a minor, lascivious acts with a child, indecent contact with a child, lascivious conduct with a minor, false imprisonment, and indecent exposure.

The same month, S.O. recounted to her mother that Papa Anthony had also made her massage his butt and that he had peed in her mouth. A second CPC interview was scheduled.

The second CPC interview took place on September 20, 2011. Again, Rachel Haskins conducted the interview, and it was recorded. S.O. told Haskins she had forgotten to tell her something the first time. She then stated Papa Anthony had peed in her mouth while he was naked and she was clothed. She stated Papa Anthony had her touch his wiener with her hand while he had one hand on her shoulder and one on his wiener. After it happened, she spit into the garbage and threw up. It happened just one time.

On September 28, 2011, the State amended the trial information to add one count of sexual abuse in the second degree.

S.O. was deposed by defense counsel in February 2012.

By the time trial began on March 10, 2014, S.O. was nine years old. She was unable to remember anything substantive or any of the allegations she had made. Over the defendant's objections, the trial court admitted both video recordings of the CPC interviews as well as S.O.'s deposition. S.O. was at trial. She testified and was cross-examined by Olds' counsel.

Officer Andrea Wilson testified about the search of Olds' home. One picture recovered from Olds' Facebook account was a photograph of himself and S.O. and had been captioned "too sexy."

Officer Jerry Whitson testified about searching Olds' computer, phone, and cameras. No nude photos of S.O. were recovered.

Carryne Olds—the adopted daughter of the defendant—also testified for the State at trial. She testified she had lived with her father for part of 2011 when the investigation began. She stated the computer in the kitchen was password protected and she was never allowed to use her father's account but rather had to use the guest account. At some point before the police executed a search warrant for Olds' home, the defendant approached Carryne and asked her how to clear a computer and remove unwanted files. He then told her he was going to have a friend "wipe" the computer. After Olds had the computer cleared, he no longer kept his account password-protected, and Carryne was allowed to use it.

Romello Olds—the son of the defendant—testified he had never witnessed his father act inappropriately with S.O. or any other grandchildren. On cross-examination, he stated his father had recently bought him a car and sent him on a free trip for spring break.

Olds' expert, Hollida Wakefield, testified that children past the age of three do not forget or repress really traumatic events.

Prior to trial on November 12, 2013, the State filed a motion for preliminary determination of admissibility seeking a preliminary ruling on the admissibility of the S.O.'s interviews with Haskins, which occurred on June 17 and September 20, 2011. The State sought to admit the videos of the CPC interviews, alleging as of the date of filing the motion, the child had "no recall or memory of the events establishing the basis for the allegations in this case." Olds filed a motion in limine asking that the videos, any report, or statements of any lay witnesses reciting statements of others be excluded. In its ruling the court noted the State acknowledged the CPC interviews were testimonial. The court further concluded

that if the witness was unable to testify to the events described in the interviews, the witness was unavailable. However, the court concluded the interviews were preliminarily admissible because Olds had a sufficient opportunity to cross-examine the witness during a pretrial deposition taken February 14, 2012. At the time of the deposition, S.O. was seven years of age.

Following the close of evidence, on March 17, 2014, the jury returned guilty verdicts on all seven counts against the defendant. Olds appeals.

## II. Standard of Review.

We review claims based on the Confrontation Clause de novo. *State v. Newell*, 710 N.W.2d 6, 24 (Iowa 2006).

"We review hearsay rulings for correction of errors at law because admission of hearsay evidence is prejudicial to the nonoffering party unless the contrary is shown." *State v. Elliiot*, 806 N.W.2d 660, 667 (Iowa 2011).

We review ineffective-assistance-of-counsel claims de novo. *State v. Tompkins*, 859 N.W.2d 631, 636 (Iowa 2015). A defendant may raise such a claim on direct appeal if they have "reasonable grounds to believe that the record is adequate to address the claim." *Id.* at 637; *see also* Iowa Code § 814.7(2) (2011). Ordinarily, we preserve such claims for postconviction-relief proceedings. *Tompkins*, 859 N.W.2d at 637. "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *Id.* "We will resolve the claims on direct appeal only when the record is adequate." *Id.* However, it is a rare case in which the trial record alone is sufficient to resolve a claim on direct appeal. *Id.*

We will uphold a trial court's denial of a motion for judgment of acquittal if there is substantial evidence to support the defendant's conviction. *State v. Adney*, 639 N.W.2d 246, 250 (Iowa Ct. App. 2001). Substantial evidence is such evidence as could convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *Id.* Our scope of review of sufficiency-of-evidence challenges is for correction of errors at law. Iowa R. App. P. 6.907; *see also Adney*, 639 N.W.2d at 250. In reviewing such challenges, we give consideration to all the evidence, not just that supporting the verdict, and view such evidence in the light most favorable to the State. *Adney*, 639 N.W.2d at 250.

The district court has broad discretion when ruling on motions for a new trial in which the defendant alleges the verdict is contrary to the weight of the evidence, and we review its decision for an abuse of that discretion. *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). The weight-of-the-evidence standard differs from the sufficiency-of-the-evidence standard in that the district court does not view the evidence from a standpoint most favorable to the government. *State v. Taylor*, 689 N.W.2d 116, 134 (Iowa 2004). Rather, the court weighs the evidence and considers the credibility of the witnesses. *Id.* While it has the discretion to grant a new trial where a verdict rendered by the jury is contrary to law or evidence, the court should do so only "carefully or sparingly." *Id.* In our review, we limit ourselves to the question of whether the trial court abused its discretion; we do not consider the underlying question of whether the verdict is against the weight of the evidence. *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

**III. Discussion.**

    **A. Confrontation Clause.**

The Sixth Amendment to the United States Constitution includes what is described as the Confrontation Clause: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The clause bars "admission of testimonial statements of a witness who did not appear at trial unless [s]he was unavailable to testify, and the defendant had had a prior opportunity for cross examination." *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004). "This constitutional provision reflects the preference for face-to-face confrontation at trial and the right of cross-examination." *State v. Musser*, 721 N.W.2d 734, 753 (Iowa 2006) (internal citations and quotation marks omitted).

Olds appeals the admission of the CPC videos, the discovery deposition, and the drawings done by S.O. because he maintains that, for all intents and purposes, S.O. did not appear at trial. In other words, he argues that even though he was technically able to confront the witness at trial, her lack of memory so hindered his ability to cross-examine her that his constitutional right to confront the witness was violated. He also argues that the prior deposition taken of S.O. did not fulfill the requirement of "prior opportunity for cross-examination," so her prior statements should not have been admitted at trial.

The Confrontation Clause provides defendants with the literal right to confront their witnesses. *See California v. Green*, 399 U.S. 149, 156–57 (1970) ("[I]t is this literal right to 'confront' the witness at the time of trial that forms the core of the values furthered by the Confrontation Clause."). "The Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross

examination that is effective in whatever way, and to whatever extent, the defense might wish." *Tompkins*, 859 N.W.2d at 640 (citing *United States v. Owens*, 484 U.S. 554, 559 (1988)). "Although mere physical presence of the declarant is not sufficient to satisfy the Constitutional requirement, a perfectly satisfactory cross-examination is not required." *State v. Rojas*, 524 N.W.2d 659, 664 (Iowa 1994).

This case presents an extension to our supreme court's ruling in *State v. Bentley*, 739 N.W.2d 296 (Iowa 2007). In *Bentley*, the court concluded a CPC interview, as occurred under our facts, was testimonial and if admitted, would violate the Confrontation Clause if the witness was unavailable because Bentley had no prior opportunity to cross-examine the witness. 739 N.W.2d at 301. The witness was unavailable in *Bentley* because the witness was deceased. *Id.*

The present case is distinguishable from *Bentley* because the complaining witness who was now age nine, did take the witness stand, although she was unable to recall any of the alleged criminal acts. However, a pretrial deposition was taken by Olds' counsel during a time when she could recall many of the incidents.

Here, S.O. attended the trial, testified, and was cross-examined by Olds. Although her testimony was different than the prior statements that were admitted, this does not implicate the Confrontation Clause. *See Tompkins*, 859 N.W.2d at 640 ("[T]he general rule is that when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior statements." (internal quotation marks omitted) (citing *Crawford*, 541 U.S. at 59 n.9)). Olds was able to cross-examine her in front of the jury—

highlighting her lack of memory and the inconsistency in her testimony. The jury was also able to view her demeanor. *See Delaware v. Fensterer*, 474 U.S. 15, 21–22 (1985) ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion. To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony."). "[I]t is untenable to construe the Confrontation Clause to permit the use of prior testimony to prove the State's case where the declarant never appears, but to bar that testimony where the declarant is present at trial, exposed to the defendant and the trier of fact, and subject to cross-examination." *Green*, 399 U.S. at 166–67. The right to cross-examine is not denied by the State "whenever the witness' lapse of memory impedes one method of discrediting [her]." *Fensterer*, 474 U.S. at 19. "The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee." *Owens*, 484 U.S. at 560 (finding no confrontational violation where cross-examination was of limited utility because, after the testimonial statement, the witness suffered a head injury that impaired the witness's memory).

Other courts have reached similar conclusions. In *State v. Cameron*, 55 A.3d 272, 280–81 (Conn. 2012) *overruled on other grounds by State v. Elson*, 91 A.3d 862, 879 (Conn. 2014), the Supreme Court of Connecticut faced facts similar to the present case. In *Cameron*, the witness could remember the

interview but not its content or anything else, yet the court determined the Confrontation Clause had not been violated. 55 A.3d at 283–84. The court canvassed other case law and concluded, "Sister state decisions . . . including those in the child sexual abuse context, conclude similarly, and with near uniformity, that a testifying witness who forgets both the underlying events and her prior statements nonetheless appears for cross-examination at trial for purposes of *Crawford.*" *Id.* at 282 n.18 (internal quotation marks omitted). Similar conclusions were reached in *United States v. McHorse*, 179 F.3d 889, 899–900 (10th Cir. 1999), and *Yanez v. Minnesota*, 562 F.3d 958, 963–64 (8th Cir. 2009). The only exception or outlier is *Goforth v. State*, 70 So. 3d 174, 187 (Miss. 2011), which relied upon its state constitution to conclude the witness was unavailable.

In *Tompkins*, the court cited with approval the conclusion reached in *Owens* that the Confrontation Clause "guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, or to whatever extent the defense might wish." 859 N.W.2d at 640 (citing *Owens*, 484 U.S. at 559).

Here the cross-examination of S.O. may have been of limited utility, but defense counsel was able to probe S.O.'s testimony and expose the infirmities to the jury's attention.[1] *See Fensterer*, 474 U.S. at 22. As observed by one court, "[A]ll the purposes of the confrontation clause are satisfied even when a witness answers that he or she is unable to recall." *State v. Price*, 146 P.3d 1183, 1192

---

[1] S.O. was able to recall a conversation with her mother in the past about Olds but not the contents of the conversation and that Olds "did stuff" to her. She also recalled talking to a lady on two occasions and drawing pictures.

(Wash. 2006). "[W]hen a witness is asked questions about the events at issue and about his or her prior statements, but answers that he or she is unable to remember the charged events or the prior statements, this provides the defendant sufficient opportunity for cross-examination to satisfy the confrontation clause," and "does not foreclose the admission of pretrial statements." *Id.* We reach the same conclusion under our facts and determine S.O. was available for cross-examination and in fact was cross-examined about the events and prior statements. Thus, the Confrontation Clause does not foreclose the admission of the CPC interview or drawings created as a part of the interview process. *See Tompkins*, 859 N.W.2d at 640 ("[W]here the witness takes the stand and is available for cross-examination, the Confrontation Clause places no constraints on the use of the witness's prior testimonial hearsay statement."). [2]

Olds also argues article 1, section 10 of the Iowa Constitution should be interpreted differently than the Federal Constitution. Olds maintains that under the Iowa Constitution we should find memory loss can inhibit cross-examination

---

[2] We acknowledge the district court made a preliminary determination prior to trial that S.O. was unavailable because of lack of memory but found no Confrontation Clause violation because Olds had the prior opportunity for cross-examination of the witness by the pretrial deposition. In reaching this decision, the district court relied upon *State v. Liggins*, 557 N.W.2d 263, 269 (Iowa 1996), to conclude S.O. was unavailable "within the meaning of our rules of evidence." We acknowledge *Liggins* relied upon the definition of "unavailability of a witness" as defined by our rules of evidence to conclude there was no violation of Liggins' Sixth Amendment rights. 557 N.W.2d at 269 (concluding no violation as Iowa Rule of Evidence 804(b)(1) permitted the use of a deposition as evidence where the witness exhibited confusion and disorientation and admitted he had memory troubles). However, *Liggins* was decided before both *Crawford* and *Owens.*

In *Owens*, the court rejected the reliance upon the rules of evidence to determine unavailability for purposes of the Confrontation Clause. 484 U.S. at 560–64. The *Owens* court stated "the two characterizations are made for two entirely different purposes and there is no requirement or expectation that they should coincide." *Id.* at 564.

Moreover, we conclude the principles espoused in *Liggins* have been completely eroded by our supreme court's recent decision in *Tompkins*, 859 N.W.2d at 640.

to such a degree it violates the Confrontation Clause. We have not found—and Olds has not cited—any authority where our supreme court distinguished between the Iowa Constitution and Federal Constitution when analyzing the Confrontation Clause. Moreover, Olds did not argue the Iowa Constitution and Federal Constitution should be distinguished when analyzing the Confrontation Clause at the district court. Thus, we decline to consider the argument on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Olds also argues that the two-prong test delivered in *Maryland v. Craig*, 497 U.S. 836, 849–50 (1990), which is used to determine when face-to-face confrontation with a child victim of sexual abuse may be excused and video used instead, should be applied to this situation as well. However, the court has not expanded the test contained in *Maryland v. Craig* to situations dealing with live testimony involving a complaining witness who is unable to remember prior statements. We decline to extend the test under these facts and decline the invitation to interpret the Iowa Constitution differently under these facts.

**B. Hearsay Evidence.**

Olds also contends the district court erred by admitting the videos of S.O.'s interviews at the CPC, the pictures drawn during the interviews, and the out-of-court statements S.O. allegedly made to her mother because the evidence was hearsay not subject to an exception.

"Hearsay is not admissible except as provided by the Constitution of the state of Iowa, by statute, by the rules of evidence, or by other rules of the Iowa

Supreme Court." Iowa R. Evid. 5.802. "The hearsay rule and the Confrontation Clause are generally designed to protect similar values, but are not to be equated with each other." *Rojas*, 524 N.W.2d at 664. The "erroneous admission of hearsay is presumed to be prejudicial unless the contrary is established affirmatively. However, we will not find prejudice if the admitted hearsay is merely cumulative." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

**1. Recordings of CPC Interviews.** The district court admitted the videos from the CPC interviews pursuant to the residual hearsay rule contained in Iowa Rule of Evidence 5.807. The rule states:

> A statement not specifically covered by any of the exceptions in rules 5.803 or 5.804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

In other words, "[t]he requirements for admissibility under the residual exception are five-fold: trustworthiness, materiality, necessity, service of the interests of justice, and notice." *Rojas*, 524 N.W.2d at 662–63. Olds conceded at trial that he received notice of the State's intent and had "fair opportunity to prepare to meet it." *See* Iowa R. Evid. 5.807. On appeal, Olds maintains the videotapes do not contain the "circumstantial guarantees of trustworthiness" necessary to be admitted under the residual exception.

We considered a similar factual situation in *State v. Neitzel*, 801 N.W.2d 612 (Iowa Ct. App. 2011). In *Neitzel*, the complaining witness was seven years old when she told her parents she had been sexually abused by the defendant. 801 N.W.2d at 616. The child was interviewed approximately one week after reporting the abuse at a child advocacy center, and the interview was recorded. *Id.* at 617. When the criminal trial was held almost three years later, the witness, then ten-years-old, testified she did not remember what had happened the last time she was with the defendant. *Id.* The district court admitted the recording of the interview. *Id.* On appeal, the defendant maintained the district court erred by admitting the videotape because it was hearsay evidence not subject to an exception. *Id.* at 621. Our court found the recording was admissible pursuant to the residual hearsay exception. *Id.* at 623. We found the recording had "sufficient guarantees of trustworthiness" because the interviewer was "educated and trained in conducting this type of interview" and the witness was questioned "based upon the child's age." *Id.* Moreover, the interview was conducted shortly after the alleged abuse came to light, and the video "permitted the jury to hear exactly what questions were asked and what [the witness] said in response, while viewing [her] demeanor." *Id.*

For some of the same reasons, we believe the recordings of S.O.'s CPC interviews were admissible pursuant to the residual hearsay exception.[3] Our supreme court stated the "'guarantees of trustworthiness' must be drawn from the totality of the circumstances that surround the making of the statement and

---

[3] We acknowledge that the court in *Neitzel* also found the evidence admissible pursuant to Iowa Rule of Evidence 5.803(4), statements made for medical diagnosis or treatment. 801 N.W.2d at 622.

that render the declarant particularly worthy of belief." *Rojas*, 524 N.W.2d at 663 (citing *Idaho v. Wright*, 497 U.S. 805, 820 (1990)).[4] Here the interviews were completed by an expert forensic interviewer shortly after the allegations surfaced and well before the trial. Olds' expert acknowledged the interviewer, Haskins, followed all the proper procedures for the forensic interviews. The interviews were videotaped, and as our supreme court noted in *Rojas*, a "videotape is more reliable that many forms of hearsay because the trier of fact could observe for itself how the questions were asked, what the declarant said, and the declarant's demeanor." 524 N.W.2d at 663. We also note here there was no known reason for fabrication. We conclude the videotaped interviews and drawings have guarantees of trustworthiness and were otherwise admissible under the residuary hearsay clause.

**2. Mother's testimony regarding S.O.'s prior statements.** The district court admitted Jamie Olds' testimony regarding prior statements S.O. had made to her. The court found the statements were nonhearsay pursuant to Iowa Rule of Evidence 5.801(d)(1)(b). The rule provides a statement is not hearsay if, "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement," and the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive."

The mother testified that S.O. told her "Papa Anthony made me have a cigarette." The mother testified she asked S.O. if they had any other secrets and

---

[4] In *Wright*, the Court approved a nonexhaustive list of factors to consider: spontaneity and consistent reliability, mental state of declarant, use of terminology unexpected of a child of similar age, and lack of motive to fabricate. 497 U.S. at 816.

S.O. responded, "Yes. Papa Anthony makes up with me."[5] The court ruled the statements were consistent with S.O.'s testimony that "Papa Anthony did stuff to me." The court found the defense had implied in its cross-examination of S.O. that her mother had told her or influenced her to make the allegations.

Olds maintains the district court was wrong to admit the testimony but does not argue any specific error made by the district court. As a general rule, "we will not speculate on the arguments [the appellant] might have made and then search for legal authority and comb the record for facts to support such arguments." *Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996). In most cases the appellant's "random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration." *Soo Line R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994).

**C. Admission of Discovery Deposition.**

Olds maintains the district court erred by admitting the prior deposition taken of S.O. The discovery deposition of S.O. was read into evidence over the

---

[5] On appeal, Olds also maintains the district court erred because Jamie Olds was allowed to testify about comments S.O. made regarding "how [Olds] molested her, S.O.'s demonstration wherein she straddled a doll on a bed, her claim that Mr. Olds had her massage his buttocks, tied her up and that he 'peed in her mouth.'" However, Olds did not object to any of the questions that elicited the statements, and the record does not indicate he requested or received a standing objection to the line of testimony. *See Prestype Inc. v. Carr*, 248 N.W.2d 111, 117 (Iowa 1976) ("Although a standing objection may save trial time and be convenient for both court and counsel, it makes appellate review infinitely more difficult and, for the litigants more uncertain. The allowance of standing objections in trials at law is ordinarily not to be recommended."). Because Olds did not object to the testimony he now claims is improper, error was not preserved. *See Meier*, 641 N.W.2d at 537 ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Additionally, Olds does not argue trial counsel was ineffective for failing to object. *See Everett v. State*, 789 N.W.2d 151, 156 (Iowa 2010) ("Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules.").

objections of defense counsel. The State offered the exhibit under the "former testimony" exception to the hearsay rule pursuant to Iowa Rule of Evidence 5.804(b)(1). Over the defense's objection that the deposition was hearsay, the court permitted the deposition to be read pursuant to rule 5.801(d)(1)(a). This rule provides:

> *Statements which are not hearsay.* The following statements are not hearsay: (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.

On appeal, Olds argues the discovery deposition was not admissible under the rules of criminal procedure.[6] Olds maintains the purpose and use of depositions are addressed in the Iowa Rules of Civil Procedure 1.701 through 1.709 and are incorporated by reference in Iowa Rule of Criminal Procedure 2.13. The rules provide two instances in which depositions may be used at trial in lieu of live testimony. Olds argues neither instance applies in the present case because the deposition was not taken to perpetuate testimony but rather as a discovery deposition. However, this issue was not presented to the district court. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier*, 641 N.W.2d at 537. "If a party fails to timely apprise the district court of an issue, the matter is deemed unpreserved for our review." *State v. Hernandez-*

---

[6] We acknowledge the deposition was testimonial, but its admission did not violate the Confrontation Clause for the same reasons explained in connection with the CPC interviews. *See State v. Rainsong*, 807 N.W.2d 283, 289 (Iowa 2011) (concluding depositions are testimonial hearsay).

*Lopez*, 639 N.W.2d 226, 233 (Iowa 2002). Thus, we decline to consider his claim of error regarding the admission of S.O.'s deposition.

### D. Ineffective Assistance: Limiting Instruction.

Olds maintains trial counsel was ineffective for failing to request a limiting instruction addressing the questions asked by Rachel Haskins during the CPC interviews.

To succeed on a claim of ineffective assistance of counsel, Olds must establish by a preponderance of the evidence: (1) his trial counsel failed to perform an essential duty and (2) this failure resulted in prejudice. *See State v. Adams*, 810 N.W.2d 365, 372 (Iowa 2012); *accord Strickland v. Washington*, 466 U.S. 668, 687 (1984). Reversal is warranted only where a showing of both of these elements is made. *Simmons v. State Pub. Defender*, 791 N.W.2d 69, 75–76 (Iowa 2010). If we conclude Olds has failed to meet his burden as it relates to either prong, we need not decide whether he has satisfied his burden as it relates to the remaining prong. *See State v. Clay*, 824 N.W.2d 494, 501 n.2 (Iowa 2012) ("The court always has the option to decide the claim on the prejudice prong of the *Strickland* test, without deciding whether the attorney performed deficiently."). Ordinarily, we preserve ineffectiveness claims for postconviction-relief proceedings. *Id.* at 493. If the record is inadequate to address the claim on direct appeal, we must preserve the claim for a postconviction-relief proceeding, regardless of the potential viability of the claim. *State v. Johnson*, 784 N.W.2d 192, 198 (Iowa 2010).

Olds relies on an unpublished case from our court for the proposition that counsel had a duty to request a limiting instruction regarding the jury's use of the

questions asked by Haskins during the CPC interviews. In *State v. Esse*, No. 03–1739, 2005 WL 2367779, at *3 (Iowa Ct. App. Sept. 28, 2005), nine hours of recorded interviews of Esse with law enforcement were played for the jury. The interviews "contain[ed] several statements that, if viewed as evidence, indicate[d] Esse was lying or the agents had unspecified evidence of Esse's involvement beyond that which was introduced at trial." *Esse*, 2005 WL 2367779, at *4. Pursuant to Iowa Rule of Evidence 5.105,[7] Esse requested a limiting instruction, which stated, "Statements and questions by law enforcement officers during interviews with the Defendant are not evidence to be considered for the truth. The Defendant's answers and responses to those questions and statements are evidence." *Id.* at *3. The district court denied the request. We concluded Esse was prejudiced by the district court's refusal to include a jury instruction because "the jury was entitled to give whatever weight to the evidence that it saw fit, and because we [could] not known what weight it may have placed on the agents' statements." *Id.* at *5.

A review of the interviews shows Haskins affirmatively repeating what S.O. stated. For example, when S.O. stated, "Papa Anthony kissed me," Haskins responds, "Where were you when Papa Anthony kissed you?" and "Where did Papa Anthony kiss you?" Such questioning might imply the incidents alleged did take place. A defendant is entitled to have his guilt or innocence determined solely upon the evidence and not upon nonevidentiary assertions regarding his guilt or credibility. *See State v. Graves*, 668 N.W.2d 860, 874

---

[7] The rule states, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

(Iowa 2003). However, the record on appeal is inadequate to address Olds' claims as we do not know what reasons counsel may have had for not requesting the instruction. *See State v. Bentley*, 757 N.W.2d 257, 264 (Iowa 2008) ("Even a lawyer is entitled to his day in court, especially when his professional reputation is impugned."). Thus, the issue of whether trial counsel was ineffective is preserved for possible future postconviction-relief proceedings. *See State v. Rubino*, 602 N.W.2d 558, 563 (Iowa 1999) ("Ordinarily claims of ineffective assistance of counsel are preserved for postconviction relief. That is particularly true where the challenged actions of counsel implicate trial tactics or strategy which might be explained in a record fully developed to address those issues." (citation omitted)).

### E. Sufficiency of the Evidence.

Olds maintains the district court erred in overruling his motion for judgment for acquittal. The State has the burden to prove every fact necessary to constitute the crime with which the defendant is charged. *See State v. Gibbs*, 239 N.W.2d 866, 867 (Iowa 1976). When deciding if substantial evidence supports the verdict, we view the evidence in the light most favorable to the State. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Olds does not argue the State failed to prove an element of any of the crimes. Rather, he maintains the jury's guilty verdicts are not supported by substantial evidence because S.O. testified inconsistently and Haskins used flawed interview techniques during the CPC interviews. These arguments are more consistent with claims regarding the weight of the evidence, and we will address them below. Otherwise, viewing the evidence in the light most favorable to the State, a jury could reasonably believe

S.O.'s statements made at the CPC interviews and in her deposition. Thus, the district court properly denied Olds' motion for judgment of acquittal.

### F. Weight of the Evidence.

Olds maintains the district court abused its discretion in denying his motion for new trial because the weight of the evidence does not support the jury's verdicts. Olds maintains S.O.'s testimony was "inconsistent" and "absurd." He argues that the statements she made during the CPC interviews were not credible because she could not remember the substance of those allegations nor making the allegations at the time of trial. He also maintains the testimony of S.O.'s mother, Jamie Olds, was not credible because of "her extreme animosity towards" the defendant.

Olds maintains S.O. was not a credible witness because she was unable to remember the details of her allegations or the substance at the time of trial. However, S.O. made detailed allegations in two different CPC interviews. The interviews were conducted by a trained professional. Olds' own expert, Hollida Wakefield, agreed Haskins' interviews largely complied with the guidelines for forensic interviews. S.O. stated Olds tied her up and took pictures of her without her clothes on and uploaded them to Facebook. Although no nude images of S.O. were found on Olds' computer, he admitted the computer's hard drive had been wiped before the police searched it. Moreover, Olds' daughter testified Olds' computer was always password protected and she was not allowed to use it until after he had it "wiped clean." The State did introduce one picture of Olds and S.O.—taken when S.O. was approximately six years old—which Olds had uploaded on Facebook and captioned "too sexy." In a CPC interview, S.O.

stated her Uncle Romello had seen Olds on top of her and had thrown her to the ground. Romello testified he had never seen Olds act inappropriately with S.O. or any of his grandchildren. At the time of trial, Romello was living with Olds and had recently received both an automobile and a free trip from Olds. Finally, Olds' expert, Wakefield, testified that children past the age of three "don't forget" and do not repress "really traumatic events." On cross-examination, Wakefield admitted she does not do psychotherapy anymore and has not seen more than two children since 1990, with neither of those being in the last ten years. Her current business comes from attorneys who retain her to review forensic interviews, although she does not personally conduct "front line" forensic interviews.

The district court is not to disturb the jury's verdict "against any mere doubt of its correctness." *Reeves*, 670 N.W.2d at 203. "Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). Romello contradicted S.O.'s statements that he witnessed Olds on top of her, and Olds' expert testified that children do not forget traumatic events—casting doubt on whether the allegations made by S.O. in the CPC interviews were true. But "[a] jury is free to believe or disbelieve any testimony as it chooses and to give as much weight to the evidence as, in its judgment, such evidence should receive." *Liggins*, 557 N.W.2d at 269. Moreover, Olds maintains Jamie Olds' testimony regarding what S.O. had told her is not credible because of Jamie's "extreme animosity towards" him, but it is not clear from the

record that the jury was made aware of any such "extreme animosity." We do not believe this is an extraordinary case where the evidence preponderates heavily against the jury's verdict. *See Shanahan*, 712 N.W.2d at 135. The district court did not abuse its discretion in denying Olds' motion for new trial.

**IV. Conclusion.**

Because S.O. appeared at trial and was cross-examined, Olds' Sixth Amendment right to confront the witnesses against him was not violated under the Federal Constitution. We decline the invitation to interpret the Iowa Constitution differently, as the issue was not preserved for our review. We find the district court properly admitted the recordings of the CPC interviews and drawings pursuant to the residual hearsay rule. Because Olds maintains the district court was wrong to admit the testimony of the mother about S.O.'s previous statements but does not argue any specific error made by the district court, we decline to address the issue. Olds' complaint wtih respect to the admission of the pretrial deposition was also not preserved. Because the jury's verdicts are supported by substantial evidence, the district court did not err in denying Olds' motion for judgment of acquittal. Because the weight of the evidence also supports the verdicts, the district court did not abuse its discretion in denying Olds' motion for new trial. Finally, we preserve for possible postconviction-relief proceedings Olds' claim that trial counsel was ineffective for failing to request a limiting instruction regarding Haskins' questions during the CPC interviews. We affirm.

**AFFIRMED.**